RICH v. INDUSTRIAL COMMISSION et al.

No. 5283.   Decided October 26, 1932.   (15 P. [2d] 641.)

*Gaylen S. Young,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Atty. Gen., and *Bagley, Judd & Ray* and *A. H. Nebeker,* all of Salt Lake City, for defendants.

WOLFE, District Judge.

The applicant on August 10, 1931, suffered a fracture of his right leg through an assault by W. S. Cheeseman while he was executing a writ of attachment on certain property belonging to said Cheeseman, which writ of attachment issued out of the city court of Salt Lake City, Utah. At the time of serving said writ applicant was a constable of Salt Lake City precinct. His services for executing the writ of attachment were paid for by the plaintiff in the attachment suit according to the statutory fee schedule. The above facts are undisputed. A constable for the Salt Lake

City precinct is elected quadrennially by the qualified electors of the precinct. He receives no other remuneration for the services for executing a writ of attachment than is laid down by the statute; the fee being paid by the plaintiff and being assessable as costs against the defendant, and is the personal property of the constable. The question is: Is the applicant entitled to compensation, and, if so, from whom? Comp. Laws Utah 1917, § 3110, provides, among others, that the following shall constitute employers subject to the act: "(1) The state, and each county, city, town, and school district therein." Section 3111, as amended by chapter 73, Laws Utah 1925, provides that:

"The terms 'employee,' 'workman' and 'operative,' as used in this title shall be construed to mean:

"(1) Every elective and appointive officer, and every other person in the service of the State and of every county, city town and school district within the State, serving the State or any county, city, town or school district therein under any election or appointment, or under any contract of hire, express or implied, written or oral," etc.

The commission, in its decision,

"concludes that Salt Lake City Precinct is an independent political entity. The constables of Salt Lake City, elected as they are, are officers of the Precinct and are not officers or employees of either Salt Lake County or Salt Lake City, and this case is not covered by section 3111 of the Workmen's Compensation Act or any other provision of that act."

The commission therefor denied compensation.

The matter was tried on the issue as to whether a constable is a county officer. We are of the opinion that the applicant in this case is not entitled to recover, regardless of whether he is a county officer or an officer of an independent political unit known as a precinct. When the constable executed the writ of attachment in this case, he was either an independent contractor of the plaintiff in the attachment action or an agent of the plaintiff and was not serving either the state, county, city, or pre-

cinct. The record does not show whether the writ of attachment was directed to the constable or the sheriff, or to both, but whether it was directed to him or not he was not required to serve an attachment writ issuing out of the city court. The law clothes him with power to do so, but makes it optional or voluntary for him to say whether he will accept the employment. When he accepts the employment, he acts in his capacity as constable or otherwise he would not be entitled to serve it, but he acts either as an independent contractor in such capacity for the person employing him or as an agent of such person. It is not necessary in this case to decide whether he is an independent contractor or an agent. He does not act in a governmental capacity as in the case of serving a criminal warrant or in serving criminal process or in making a legal arrest. If he were serving legal process which he was required to serve, as when he serves process out of the justice's court, then he might be considered as acting in the course of his employment as constable serving a court as an instrumentality of government. In the present case it cannot be said that he was in the regular course of his employment for any governmental unit. He was employed by a litigant because the law gave him power to act in the capacity in which the litigant employed him, but did not compel him to act by reason of his capacity. The constable has no authority to serve process in civil actions except as conferred upon him by statute. *Leavitt* v. *Leavitt*, 135 Mass. 191. Before 1917 a constable had no power to serve any process issuing out of the city courts. In 1917 the Legislature amended what is now section 1627, Compiled Laws Utah 1917, to read as follows:

"Every constable shall attend the court of the justice of the peace within his precinct whenever so required, and, within his county, shall execute, serve, and return all process and notices directed or delivered to him by a justice of the peace of such county, or by any competent authority, and shall perform such other duties as are prescribed by law; provided, that in cities of the first class constables *may* serve all civil process notices and writs of the city courts of such cities." (Italics ours.)

Before that amendment, as well as since, he was required to serve process issuing out of the courts of the justices of peace. Since that amendment, but not before, he is clothed with authority but not required to serve process out of the city court. The amendment was passed in order to allow the constables in city precincts to obtain more fee business. Before 1917 all process out of the city courts was required to be served by sheriffs of the county and the sheriff was required to serve it; that is to say the only party who had capacity to serve civil process out of the city courts except summons, was the sheriff, and he was required to serve it. In 1917 constables were given authority to serve process out of the city courts and the class by whom process out of the city courts could be served was enlarged to include constables. Section 1721, Comp. Laws Utah 1917, excluding the bracketed portion, read as follows:

"Executions upon judgments, and all writs and process, except summons out of a city court in civil actions, must be issued to and served by the sheriff [or any constable] of the county."

The Legislature in 1919 amended section 1721 so as to add the bracketed part. Section 1627 as it stood in 1917 and section 1721, as amended by Laws Utah 1919, c. 34, now effect a situation that a litigant desiring process served out of the city court, except summons in civil cases, must have it served by the sheriff of the county or by the constable, but only the sheriff is required to serve it. See subsection 9, § 1501, Comp. Laws Utah 1917:

"The sheriff shall: * * * 9. Serve all process and notices in the manner prescribed by law."

The sheriff is liable on his bond for refusing to serve process. If section 1721, as amended by Laws 1919, c. 34, and section 1627 and subsection 9 of section 1501, Comp. Laws Utah 1917, are all read together, we see that the constable has authority, but not the duty, to serve civil process out of the city court, whilst the sheriff has not only the authority but the duty to serve such process. There

may be some question as to the meaning of the phrase in section 1627 reading "or by any competent authority" contained in the clause "and, within his county, shall execute, serve, and return all process and notices directed or delivered to him by a justice of the peace of such county, or by any competent authority." "Any competent authority" must mean authority which the law makes competent to require the constable to execute process. An examination of the laws of Utah from earliest times reveals no authority whose process the constable is compelled to serve outside that of the justice's court, except process of a district court when a sheriff is disqualified. See sections 1523 and 1524, Comp. Laws Utah 1917. Nowhere is the judge or the clerk of the city court made competent authority to compel a constable to serve process. In fact, if the phrase "any competent authority" included the judge or the clerk of the city court, there would have been no need for the amendment of 1917. If he was compelled to serve process out of the city court under the phrase "any competent authority," there would be no need for the proviso "that in cities of the first class constables may serve all civil process notices and writs of the city courts of such cities."

We must conclude, therefore, from the principle that a constable has no authority to serve process in civil actions except as the same may be expressly conferred upon him by statute, that it was only in 1917 that he was clothed with such authority, that no statute before that time gave him authority to do so, and that, when he served the writ of attachment at the time he was assaulted, he had neither the duty nor the obligation to execute or serve the process or accept the employment, but that it was optional with him.

The ambiguous subsection 1 of section 3111, as amended by Laws Utah 1925, c. 73, as quoted in the beginning of this opinion, should be rearranged to read as far as material here as follows:

"The term 'employee' * * * as used in this title shall be construed to mean: (1) Every elective and appointive officer * * *

serving the State or any county, city, town or school district therein under any election or appointment, or under any contract of hire, express or implied, written or oral * * *" and every "person in the service of the State and of every county, city, town and school district."

Whether the constable is a county or precinct officer, he may in some matters serve the county or precinct and may in other matters serve the state (such perhaps as the services in a criminal action brought by the state, whether acting as substitute for the sheriff or in pursuance of his duties to attend the justice's court and serve process issuing therefrom). It is not to be assumed that all state, county, city, or precinct officers in all their acts always serve the entity or legal unit of which they are officers. A sheriff, a county officer, may serve by some acts at various times the state or a city as well as a county. A notary public, a state officer, may serve an individual. A constable cannot be said in a case where his taking of the employment is voluntary to be serving the state or the county or the city. The fact that he executes process out of the city court in civil matters cannot, even if it were obligatory, make him a city officer, or could he be considered as serving the city. The city court is an instrumentality set up by the state to try minor controversies between persons, the burden of maintaining the court being fastened largely upon another instrumentality of government, to wit, the city. The city court is only the instrumentality of the city in those matters where the city uses it as a means for municipal government, as in the case of prosecution under city ordinaces. It is for civil cases the instrumentality of the state, an agency set up to execute sovereign functions of the state. So, in serving or executing process in a civil action out of a city court, a constable cannot be considered as an employee of, or as serving, the city. Can he be considered as serving the state or the county? If the process had issued out of the justice's court in a civil action, then there would have been some force to the contention that he was serving the state on the

theory that the justice's court was itself an instrumentality set up by the state for the purpose of deciding, not only criminal matters, but civil controversies between individuals, and that, since he was required to serve process in civil cases out of the justice's court, he was acting as an officer of the court, and therefore serving the state by serving one of its instrumentalities. Where the state set up agencies to discharge some of its functions of sovereignty, such as a court to try controversies between individuals, and by law compels an officer to do an act relating to the suit between such litigants, or in pursuance of a judgment obtained in such action, there might be good ground for contending that such officer was serving the state while he was executing such process or doing the act required. In the case of *Commonwealth ex rel.* v. *Shindle,* 19 Pa. C. C. R. 258, it was held that a justice of the peace was a state officer, and therefore that he could not hold two state offices, such as notary public and justice of the peace, at the same time. In the instant case, however, the constable was executing the process which the law clothed him with authority to serve as constable, but does not require him to serve. The remuneration for such service, fixed by law, went into his own pocket. He could have refused to perform the service, and in accepting the employment he acted as a free agent contracting with the litigant.

There are certain types of officers who are given authority to do certain acts without correlative duties. They are permitted or clothed with authority by the state or political subdivision, and are not required to perform them. A notary public may be of this type. He is a state officer. If he should, while affixing his seal to an acknowledgment of a deed, break the seal and cut his hand, generate infection and die, would the state be liable? Is he not given the power to act and do the service and by virtue of his office give it validity as a notarial act, but is he required to perform it? Is he not an independent contractor in regard to the service rather than an officer of the state in the sense that he is

employed by or is serving the state? The county clerk, in relation to the work performed in naturalization matters, is in the same situation as the constable was in this case. He is entitled to act in naturalization matters because he is clerk, but the duties are not imposed upon him nor do the services form a part of his office as clerk. He may retain the fee. See *Eldredge* v. *Salt Lake County*, 37 Utah 188, 106 P. 939. Should he be injured in performing duties in regard to naturalization matters, the county or its insurance carrier would not be liable.

It should be noted that section 3111, Comp. Laws 1917, as amended by chapter 73, Laws Utah 1925, furnishes the test of employees who may take advantage of the act, and is not the section which deals with the occasion when such employee can procure compensation. If a constable is a county officer, he is one of the class which comes under the act. In this sense the phrase "serving the state or county," etc., "under any election," may not refer to the particular act or thing which he was doing at the time of the injury, but is descriptive of the employee. Put in another way, in testing whether a certain person is a public employee within the meaning of subsection 1, § 3111, as amended, first determine whether he is an elective or appointive officer, and then, further, whether he is an elective or appointive officer working for or serving the state, county, city, town, or school district generally under such election or appointment, rather than resort to the particular act he was doing at the time he was injured, in order to see whether he comes in under the compensable class of public officers. But, even though he is an elective or appointive officer serving the state, etc., and therefore comes in the class of compensable public officers, yet, if he was not injured by an accident arising out of or in the course of his employment with the state, county, city, town, or school district, as required by section 3113, Comp. Laws Utah 1917, he cannot recover. The illustration will be clearer if we assume that a sheriff were injured while chopping wood at

home. He would, of course, be a county officer and such county officer as would serve the state or county, and therefore come within the class of compensable public officers, but he would not have suffered an injury arising out of or in the course of his emploment with the county. Likewise, in this case, even though were we to concede that a constable is a county officer, still he did not suffer an accident arising out of or in the course of his employment with the county or state or any legal subdivision thereof, but his employment was with a private individual, which individual he was serving, having been permitted by law, but not required, to serve such an individual by executing a writ of attachment. For that reason the decision of the Industrial Commission must be affirmed.

The parties joined issue on the question of whether a constable is a county officer. The issue should have been joined on the question whether, in the use of the word "county" contained in the phrase "every elective and appointive officer * * * serving * * * any county" and in the phrase "every * * * person in the service * * * of every county," etc., as used in section 3111, the Legislature meant to include precinct officers, and therefore constables. This is a different question than whether or not a precinct officer is legally a county officer. It is a question of whether, even if precinct officers are found by refined reasoning actually in law to be county officers, they have not had such general recognition as precinct officers separately and distinct from the group of what are generally known as county officers, and so denominated by the statutes as precinct officers, as to make the omission of precinct officers in section 3111, supra, spell a clear intention of the Legislature not to include them in the class of employees subject to the act. Of course, if the constable is not legally a county officer, then in no case is he included within the class designated by section 3111, supra. But, even if he may be in law a county officer, if precinct officers—which includes a constable—have had such recognition as officers

separate and distinct from county officers and always have been called such in legislative acts and in legal phraseology and in common parlance, and have not been known or thought of as county officers, or seldom if ever so designated, then, even though they might, by strict interpretation in law, be county officers, yet the failure to include the term "precinct officers" in section 3111 by that name may show the intention not to include them in the class of compensable employees. We shall consider together the question (1) as to whether constables are really in law county officers or whether they have a separate legal status as precinct officers, and (2) the question whether, even if by strict legal interpretation county officers, the Legislature intended to include them by its use of the term "county" as contained in section 3111, supra.

The word "constable" in medieval history denoted a very high functionary under the king; a leader of the royal arms charged with the conservation of the peace of the nation. To keep the peace—a peace officer within his district, whether that district was called a hundred, a tithing, a parish, a township, or a precinct—has been the duty of high and petty constables from the Statute of Winchester, 13 Edw. I, on down to the present time. Other duties have been assigned to him, but he was to the rural district what a police officer was in the city districts, a legal guardian of the peace. Courts of the justices of the peace and constables constituted the machinery for keeping order in the smaller rural communities. Practically all of the other administrative machinery, such as tax levying, collecting, and governmental functions, was left to the larger overarching units, such as the state and its governmental subdivision, the county. But from very early times legal machinery to keep order was set up in the confines of small localities. This machinery, for the keeping of good order in the rural communities, consisting of constables and justices of the peace, was created, not by any law or ordinance of any sub-

division of the kingdom, such as the county, but by Parliament itself.

What is the history of the origin of precincts and constables in Utah? The earliest mention of the term "precinct" contained in any of the statutes or compilations of statutes occurs in the Ordinances of the State of Deseret, approved January 6, 1851, relating to a road tax. This act provided in section 3 that the poll tax and all assessments of tax for road purposes may be paid in labor upon the roads and highways at the rate of ten hours good and faithful labor for each day assessed, or commute the same by paying into the hands of the county commissioner or supervisor of the precinct, in which he, she, or they reside, $1.50 for each and every day's labor so assessed. And in section 4 each precinct shall be considered a road district, etc. See, also, the ordinances for establishing and regulating estray pounds, passed February 7, 1851, where it was provided that the road commissioner should locate an estray pound at or near the center of each precinct in his county. In another act passed February 7, 1851, it was provided in section 7 that

"each precinct shall, at the time of election, elect two or more fence viewers, * * * whose duty it shall be to examine and decide upon the legality of all fence in their respective precincts when called upon. * * *"

Although justices of the peace were provided for by the congressional act establishing a territorial government for Utah, passed September 9, 1850 (9 Stat. 453), nothing was mentioned in that act about the creation of precincts. In section 7 of the congressional act it is provided

"that all township, district, and county officers, not herein otherwise provided for, shall be appointed or elected, as the case may be, in such manner as shall be provided by the governor and legislative assembly of the territory of Utah."

The word "township" and not "precinct" was used. It was eastern terminology. In the Eastern States townships are small geographical units and subdivisions of the county.

Owing to the likelihood of its being confused in the West with the survey unit of area, a township, the term "precinct" was probably used by early government officials. At least, we do not find the term "township" used in any other place except the congressional act providing a territorial government for the territory of Utah until we find it again in section 26 of article 6 of the Constitution. Here again it must be read to mean a small geographical unit of government, regardless of whether called township or precinct. These units are called in all of the early laws "precincts." Nothing appears in the Constitution of the state of Deseret, adopted March 13, 1849, in reference to townships, precincts, constables, or justices of the peace, yet, since precincts were mentioned in the ordinances of the General Assembly of the state of Deseret, passed in 1850 and 1851, we must presume that they were existing subdivisions for the purpose of government, and we must conclude that they were constituted by the authorities of such subdivisions before the Constitution of the state of Deseret.

The earliest mention of "constable" occurs in an act in relation to justices of the peace, approved February 4, 1852, where it provided by section 1,

"That each precinct in this territory shall elect one justice of the peace and one constable, and the same may be increased in any precinct by the county court, whenever they shall deem that the public good requires it."

Chapter 66, § 4, Comp. Laws Utah 1855, pertaining to an Act approved January 17, 1854, provides that "it shall be the duty of sheriffs and constables faithfully and diligently to execute all orders, process and requirements of a court," etc. By an Act approved January 16, 1865, it was provided that the probate judge of any new or unorganized county, together with three selectmen to be approved by the probate judge (he was a sort of governor for the county, as well as judge), should appoint "all other county officers required by law." It did not specify who the county officers were.

On January 21, 1859, a fee schedule for constables was set up. Up to that time sheriffs and constables were compelled to act "when a reasonable compensation is tendered or satisfaction given that the costs of service will be reasonably paid." The Act of January 17, 1855. Chapters 4, 9, and 10, Session Laws 1880, providing for the creation of Emery, San Juan, and Uintah counties, specified that the probate judge and three selectmen should appoint "all county officers necessary for the full and complete organization of said counties and the transaction of all business therein" etc., but did not designate their titles. It further provided that the probate court should "define the boundaries of precincts," etc. The Act of January 8, 1866, was the first act providing for any comprehensive county government. It provided for the election of three selectmen of each county. These selectmen, with the probate judge, were constituted as the county court, but the court seems more to have been an administrative body than a judicial body. It managed all county business and cared for all county property. It was the forerunner of the present county commission. Section 7 of that act provided that this court should district "the respective counties into road districts, precincts, school district or such other subdivisions as shall become necessary or proper." Comp. Laws Utah 1876, c. 4, title 4 (section 166 et seq.), is headed "Of County Officers and Their Duties." Chap. 5 (section 262 et seq.) is headed "Of Precinct Officers and Their Duties." This latter chapter contains only the two laws heretofore mentioned pertaining to justices of the peace and constables (Act of February 4, 1852) and fence viewers (Acts of January 19, 1866 and February 18, 1870). Section 266 of Comp. Laws Utah 1876, being section 3 of the Act of February 18, 1870, provides:

"All county and precinct officers made elective at the general election, who are required by law to file bonds, shall give bonds with approved security, to the acceptance of the probate judge of their respective counties, which shall be filed in his office."

In the Compilation of 1876 county and precinct officers were treated under entirely separate chapters, and in the Compilation of 1888 precinct officers were included under article 6 of chapter 5, pt. 2, which article includes county prosecuting attorneys, recorders, and coroners, as well as constables, but the large division known as chapter 5, of which article 6 is a part, is headed "County and Precinct Officers." Not too much significance can be given to classification of headings under Codes because we find in chapter 4, tit. 4, Comp. Laws 1876, headed "County Officers and Their Duties," an act relating to notaries public, who, while they formerly acted within county geographical limits, are state officers. In the Compilation of 1898, section 544, under chapter 4 headed "County Officers," which chapter is included in title 12 of the Code headed "Counties," reads as follows:

"The officers of a precinct are one justice of the peace and one constable. The board of county commissioners of each county, as public convenience may require, shall divide their respective counties into precincts for the purpose of electing justices of the peace and constables."

In the Laws of 1896, under the heading "County Officers," contained under the division relating to "County Governments," we find section 47 reading as follows:

"The officers of a county are a sheriff, a county clerk, an auditor, a recorder, a county attorney, an assessor, a coroner, a collector, a treasurer, a superintendent of shools, a surveyor, the county commissioners, and such other officers as may be provided by law. * * *"

In section 49 of the same chapter it is provided that:

"The officers of a precinct are one justice of the peace, and the constable."

The Compilation of 1907 lists constables under chapter 13, title 15 (section 648), relating to "Counties," and gives chapter 13 the heading "Other Officers," and includes under the same heading the assessor, county superintendent of

schools, and justice of the peace. The Compilation of 1917 (section 1627) simply copies the nomenclature of the Compilation of 1907 in that regard verbatim.

From the knowledge of the purposes for which petty constables were originally created in the early English law and how they were created in Utah, the nature of their duties, the purposes they were supposed to serve in this state, the way that they have been referred to by various acts, how they have been designated by the Legislature, we may draw the following conclusions: Constables, from time immemorial, were country peace officers, part of the machinery constituted for keeping the peace and order in small territorial divisions; that as occasion arose for having some one perform certain tasks in those local communities, such duties were given to the constables—such, for instance, as making them estray officers or pound keepers; that they were created, not by the power of any legal subdivision of the state, such as a county or a city; but by the paramount lawmaking body of the state; that they are therefore not officers created by a legal subdivision for the better or more convenient administration of its business, such as a ward officer or employee of a city, but their power springs from legislative enactment and not from any lower source; that they are elected by the electors of a precinct and essentially serve as precinct officers, although in criminal matters they may serve the state, and in matters of optional employment they may serve individual litigants; that they have been designated from early times in this state in the statutes as precinct officers, and in the Session Laws of 1896 have been expressly declared as such in the face of a separate classification in the same act designating the county officers; that they have, for purposes of convenience in classification, and because they were officers of geographical units contained in the larger territorial area of the county, been at times grouped and classified under the title of county officers; that the Constitution of Utah in section 26, art. 6, distinctly recognizes township officers, which is another

name for precinct officers, as distinct from county officers; that section 1, art. 11, of the Constitution, recognizes precincts as legal subdivisions of the county, and by section 4 of the same article enjoins on the Legislature the duty of providing for precinct and township organizations.

We conclude, therefore, that, regardless of whether constables might for some purposes, if the law showed that intention, be classed as county officers, the Legislature did not intend to include them as compensable public officers within the meaning of section 3111, Comp. Laws Utah 1917.

The fact that the board of county commissioners is made the administrative agent of the state to prescribe the amount of the bond of the constable, to fill vacancies, and to supervise the conduct of "all county officers and officers of all precincts," cannot change the fundamental facts. There are various instances where the Legislature has constituted one of its agencies or officers to supervise other agencies or officers. The very fact that it was necessary to add in the above clause the phrase "and officers of all precincts" lends some support to the view that the Legislature recognized precinct officers as distinct from county officers; otherwise the words "county officers" would have sufficed.

It is argued by the attorney for the applicant that justices of the peace were held in the case of *Martineau* v. *Crabbe,* 46 Utah 327, 150 P. 301, to be county officers, and that a fortiori a constable must be a county officer. The statement in the opinion in that case was made in answer to a contention that the act involved in the case violated the constitutional provision against the enactment of special or private laws regulating the jurisdiction and duties of justices of the peace, regulating the practice of courts of justice, creating, increasing, or decreasing fees, etc., of public officers during the terms for which they were elected. The opinion held that justices of the peace were county officers, and hence the power of the Legislature was unrestricted because of the concluding paragraph of section 26, art. 6, of the Constitution, which provides that:

"Nothing in this section shall be construed to deny or restrict the power of the legislature to establish and regulate the compensaion and fees of county and *township officers.*" (Italics ours.)

The holding was not necessary to the decision. The same saving section would have applied if justices of the peace had been held to be precinct officers, because township and precinct officers must be one and the same. We have no legal divisions called townships. Precincts are townships; that is, they are the geographical and legal subdivisions of the counties. Moreover, since the law whose constitutionality was sought to be tested in that action was in no sense private legislation, it did not contravene any of section 26, art. 6. It was a law which applied equally to all cities of the first class, so that the holding was unnecessary to the decision for that reason. Furthermore, the holding was founded on the case of *Ballantyne* v. *Bower,* 17 Wyo. 356, 99 P. 869, 17 Ann. Cas. 82. An examination of that case reveals that the Wyoming law provided that the jurisdiction of the justices of the peace extended throughout the county; that the salaries provided for county and precinct officers should be paid by the county; that fees collected by justices of the peace receiving salaries were to be paid into the county treasury; and that, therefore, they were county officers within the meaning of a certain section. We have, heretofore, indicated that whether a person is to be included under one classification or another may depend somewhat upon the particular question involved; that is to say, if the intent of the law shows that certain precinct officers are to be classified as county officers so as to effectuate certain purposes, or where it is apparent that the Legislature intended that certain provisions respecting county officers should pertain to precinct officers, then precinct officers may be considered to be within that classification for the purpose of effectuating that intention of the Legislature. That is as far as Ballantyne v. Bower, supra, goes in holding that justices of the peace are county officers within section 1224,

and their terms of office, when elected at a general election, will commence on the first Monday of the following January. The Constitution had provided that all state and county officers elected at a general election should enter upon their respective duties on the first Monday in January next following a general election or as soon thereafter as possible. The court, at page 870 of 99 P., 17 Wyo. 356, 17 Ann. Cas. 82, said:

"It seems reasonable, therefore, to regard them for some purposes at least as county officers, and to construe the term 'county officers' in section 1224, prescribing the date when they shall qualify and enter upon the discharge of their respective duties, as including justices of the peace, there being no other provision of law relating in that respect specifically to those officers."

Volume 18, A. & E. Encyc. of Law, 10, 11, in the notes, gives a list of decisions holding justices of the peace as county officers, and also a list of decisions holding them as township or precinct officers. If these cases are examined, it will be found, as in the Wyoming case, that it depends very largely in each case what particular matter the court had under consideration, and that whether they were to be considered as county officers depended largely upon the purpose which was to be served by including or excluding them as county officers. In the First, Second, and Third Editions of "Words and Phrases" will also be found cases holding both ways, which, if examined, will show that the interpretation largely depends upon what particular matter the court had under consideration.

In view of what has just been said, the case of *Martineau* v. *Crabbe,* supra, cannot be considered as contravening our holding in this case, for in this case it is not strictly necessary to determine whether a constable is or is not a county officer. In fact, as we have heretofore stated, it might be impossible to lay down any such general rule, for the test may have to be made in each case in the light of the considerations attending the case for which it

is sought to determine whether or not the constable is a county or a precinct officer. In this case it is only necessary to determine whether he is a county or precinct officer in the light of the intention of the Legislature as expressed in section 3111, Comp. Laws Utah 1917, as amended. We think that it is fully borne out that the Legislature, by omitting to include the term "precinct officers," in view of the distinct and separate classification and designation which has been given to such officers throughout the history of our legislation, did not mean to include them under the term "county officers."

For the reasons stated herein, the decision of the Industrial Commission must be affirmed.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.