365 P.2d 798

STATE of Utah, Plaintiff and Respondent,

v.

David DODGE and Aaron E. Blair,
Defendants and Appellants.

No. 9500.

Supreme Court of Utah.

Nov. 1, 1961.

Dale E. Stratford, Ogden, for appellants.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., for respondent.

WADE, Chief Justice.

David Dodge and Aaron E. Blair appeal from convictions of second degree burglary.

The record discloses that a Chevrolet car, parked on a dark street in the early morning hours of November 5, 1960, was caused to come under the surveillance of an Ogden City police officer, who was apprised of the fact that the license plates it carried had been issued for an Oldsmobile. A search of this car disclosed two wallets belonging to appellants and nothing else. Appellants were apprehended by this officer after they had entered and driven the car a few blocks. Appellants were ordered out of the car and further search by the officer at this time revealed under the front seat two pairs of gloves, two screw drivers and a hammer, which had not been in the car at the time of the first search. Appellants were arrested about 4 a. m., and about 7:30 a. m. the Ogden City police were advised that the L. D. S. Fourth Ward Church, which was in the vicinity of where appellants' car was parked, had been broken into and ransacked some time after 10:30 p. m. on November 4, 1960.

Appellants admitted that they had been together at all times during the early evening hours of November 4 and the early morning hours of November 5 until they were arrested. During that period it had rained intermittently. A heel print encased in mud was found within the building of the L. D. S. Ward Church where the burglarious entrance had been made, and it was later determined that the heel of one of the appellant's shoes worn when arrested matched the print found in the building.

Appellants contend that they were denied due process of law because their constitutional rights were violated when the court, before empaneling of the jury, gave the persons called for jury duty what appears to be an intelligence quiz to determine their qualifications to become members of a jury panel to be used in the trial of cases assigned to that court. Those persons who failed to achieve a certain minimum grade were excluded from the panel.

There is no statutory provision for the giving of tests by a court to qualify persons called for jury duty. The court erred in restricting the jury panel to those who it thus determined were qualified. The procurement of a panel by this method could tend to deny a party a fair cross-section of citizens of the county in which the trial is being held. From the questions asked in the quizzes it appears to us that it might have been the intent of the court to determine whether the prospective jurors would qualify under the provisions of Sec. 78–46–8 or were disqualified under the pro-

visions of Sec. 78–46–9, U.C.A.1953.[1] This method of the court giving tests to the jurors is not recommended and should not be pursued. The better method is for the court to follow the statutes in determining the qualification of the jurors.

■ However, the error committed in giving the jury "quizzes" in the instant case fails to show that the appellants were prejudiced thereby. Prejudice is not presumed from mere error unless the natural effect of the error is to do harm.[2] There is no showing here that the jury which tried appellants was not a fair jury taken from a cross-section of the community in which they were tried, or that the result of appellants' trial would have been different had the "quizzes" not been given. As stated in 31 Am.Jur., Sec. 11, page 17: "The constitutional right to trial by jury means a right to a fair and impartial jury, drawn from a cross section of the community * * *." Even though error was committed, no prejudice having been shown, appellants are not entitled to a new trial.

■ Appellants also contend that the court committed error when it refused to grant a motion for mistrial when the arresting officer, after testifying that he had found two wallets in the glove compartment, was asked if he found this unusual, and answered that he did because he knew both men and knew that one of them had been arrested for burglary. It does not appear that the question was asked to elicit this information or that it was expected, but rather that it was volunteered. Also, on cross-examination of appellants both admitted that they had been previously convicted of felonies. Under such circumstances it is apparent that the harm, if any, this statement could have caused appellants was insufficient to warrant a granting of the motion for a mistrial.[3]

■ Appellants further contend that there was an illegal search of the automo-

1. "78–46–8. Who competent to serve.— A person shall be competent to act as a juror: (1) Who is a citizen of the United States over the age of twenty-one years; (2) Who can read and write the English language; (3) Who resides in and has resided in the county for six months next preceding the time he is selected; provided, that the residence required to render a person competent to serve as a juror in a city or justices' court or on an inquest shall be residence in the city or precinct for six months next preceding the time actually called to serve; (4) Who is a taxpayer in the state; and, (5) Who is of sound mind and discretion, and not so disabled in body as to be unable to serve."

"78–46–9. Who incompetent to serve. —A person shall not be competent to act as a juror: (1) Who does not possess the qualifications prescribed by the next preceding section; (2) Who has been convicted of malfeasance, in office or any felony or other high crime; or, (3) Who is an officer or soldier of the United States, or a person subject to the military control thereof."

2. State v. Seyboldt, 65 Utah 204, 236 P. 225.

3. State v. Neal, 1 Utah 2d 122, 127, 262 P.2d 756.

bile in which they were riding when they were arrested, and therefore the evidence obtained in such manner deprived them of due process of law because it was a violation of their rights against unreasonable search and seizure under the provisions of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and was therefore inadmissible in evidence against them for the crime of which they were convicted under the recent decision rendered June 19, 1961, by the Supreme Court of the United States in Mapp v. Ohio.[4] The decision in that case has no application to the facts here shown because the record discloses that the search was made while appellants were in possession of a car which the arresting officer knew carried a registration plate for a vehicle other than the one for which it was issued by the Department of Motor Vehicles, this being a misdemeanor under the provisions of Section 41–1–142(c), U.C.A. 1953. A crime therefore having been committed in the presence of the officer, the arrests were authorized[5] and search of the automobile made at the time of the arrests which revealed the evidence subsequently used at the trial was not obtained by an unreasonable search and seizure.

Affirmed.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

4. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
5. Sec. 10–6–67, U.C.A.1953: "Right to arrest without warrant.—The several members of the police force shall have power and authority, without process, to arrest and take into custody any person who shall commit or threaten or attempt to commit in the presence of such officer, or within his view, any breach of the peace, or any offense directly prohibited by the laws of this state or by any ordinance."