454 P.2d 880

STATE of Utah, Plaintiff and Respondent,
v.
Dorothy BEASLEY, Defendant
and Appellant.

No. 11383.

Supreme Court of Utah.

May 9, 1969.

**424**

John Blair Hutchison, Ogden, of Weber County Bar Legal Services, for defendant and appellant.

1. United States Constitution, Amendments VI and XIV. Utah Constitution, Article I, Sec. 12. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491;

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

TUCKETT, Justice:

The defendant was found guilty of the crime of grand larceny in the court below. She appeals to this court from the trial court's denial of her motions to quash the jury panel and to set aside her conviction.

No question is raised by the defendant concerning the proceedings or rulings of the court during the trial, except as noted above, nor does she contend that the verdict is not supported by the evidence. The sole claim of the defendant here is that the master jury list from which the petit jury was drawn for the trial of her case was improperly selected in violation of the Utah statute, and also in violation of the Constitutions of Utah and of the United States.[1]

It is the defendant's contention that the Jury Commission of Weber County which selected and compiled the master jury list for the year, 1968, failed to comply with the directions set forth in Section 78–46–17, U.C.A.1953, and was therefore prejudicial to her. The record clearly shows that the Jury Commission failed to follow the provisions of the statute in some respects in its selection of the master jury list for that

Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Labat v. Bennett, 5 Cir., 365 F.2d 698. 80 Harvard Law Review 33°

year. The statute sets out various standards which may be enumerated as follows: (1) To select from the names of the legal voters on the assessment roll of the county a list of names from which the grand and trial jurors shall be drawn to serve in the district court; (2) the Commission shall choose only those who are not exempt from jury service, who are in possession of their faculties, who are not infirm or decrepit, and who are well informed and free from legal exceptions; (3) so far as practicable persons who are not returned on the jury list of the next preceding year; (4) no person should be selected as a juror who is known to be interested in or has a cause pending before the court which may be tried by a jury; and (5) no person who personally or otherwise has solicited his selection on the jury list.

In addition to the foregoing provisions, Section 78–46–18, U.C.A.1953, provides in part as follows:

* * * Names shall be selected as far as practicable from the several precincts of the county in proportion to the number of votes cast therein. * * *

The defendant contends that the Jury Commission failed to carry out the directions of the statute in the following particulars: (1) The master jury list was limited to those persons who actually voted in the prior general election and whose names appeared on the assessment roll of real property; (2) that the names of those persons who appeared on the 1967 master jury list whose names were not drawn were placed upon the 1968 jury list; (3) that all areas of Weber County did not have proportional representation on the jury list; and (4) that persons of Spanish-American descent living within the county were grossly under-represented on the jury list.

From the record it would appear that there were deficiencies in the selection of the names to be placed on the master jury list by the Jury Commission. We are of the opinion that the names of those persons on the jury list for the prior year should not have been held over and included in the list for the year 1968. The Jury Commission should not have limited its selection of persons whose names appeared upon the assessment roll of real property, but rather the Commission should have made its selection from the assessment roll of both real and personal property. It should be noted that the Jury Commission did not set about excluding any group from the jury list based upon national origin, economic status, or religious affiliation. However, we are of the opinion that the legislature intended that the master list from which jury panels are drawn should be composed of persons whose names were selected at random from all areas of the county and so far as practicable in proportion to the population of the various areas. It is noted that the statute refers to precincts which the defendant would have us

construe to mean voting districts. It would appear that the term "precinct" as used in the Constitution and the statute was meant to apply to a political subdivision originally having to do with law enforcement and maintenance of the peace.[2] The only elective officers of a precinct are the constable and the justice of the peace. However, the precinct is not synonymous with the voting district, and in fact the precinct may embrace two or more voting districts.

▉ After an extensive hearing in the court below, the court, after reviewing the evidence before it, concluded that the defendant had failed to show that she had been prejudiced by the deficiencies[3] in making up the master jury list and accordingly denied the defendant's motion to set aside the verdict. It appears to us that the decision of the court, being based upon competent evidence, should be affirmed. It is so ordered.

CROCKETT, C. J., and HENRIOD, J., concur.

ELLETT, Justice (concurring in the result).

I concur in the result, but I do not think the record so clearly shows that the Jury Commission failed to follow the provisions of the statute as the main opinion indicates.

The defendant was convicted by a jury of the crime of grand larceny. She appeals from a ruling of the trial court denying her motion to quash the jury panel and from her conviction.

It is noted that her assignments of error deal only with the motion to quash. She makes no contention that she is innocent of the crime of which she was convicted, nor does she claim that she did not have a fair trial before a fair and impartial jury. She simply complains about the manner in which the jury was selected.

The section of the statute which directs the method and manner of choosing jurors, 78–46–17, U.C.A.1953, reads as follows:

It shall be the duty of the jury commissioners before the 15th day of December after their appointment to select from the names of the legal voters on the assessment roll of the county for the current year a written list of names from which the grand and trial jurors shall be drawn to serve in the district court of such county during the succeeding calendar year. In making the selection they shall choose only those who are not exempt from jury service, who are in possession of their faculties, who are not infirm or decrepit, who are well informed and free from legal exceptions, and, as

---

2. Rich v. Industrial Commission, 80 Utah 511, 15 P.2d 641.

3. Meyers et al. v. Second Judicial District Court et al., 108 Utah 32, 156 P.2d 711; State v. Dodge, 12 Utah 2d 293, 365 P.2d 798.

far as practicable, who were not returned on the jury list of the next preceding year. No person shall be selected as a juror who is known to them to be interested in or has a cause pending which may be tried by a jury to be drawn from the persons so selected, or who, either personally or otherwise, has solicited his selection as such.

The defendant complains that her constitutional right of trial by a fair and impartial jury was violated because the jury commissioners selected actual voters instead of legal voters. All that the statute requires is that the juror be a legal voter. It is no violation of a statute requiring a legal voter, for the commissioners to choose an actual voter. The fact that a legal voter has actually cast his ballot might indicate that he has a greater interest in his citizenship than a nonvoting legally qualified voter has; and since the jury commissioners must have some discretion in selecting potential jurors, I cannot believe that they err by selecting a voting juror in preference to a person who does not participate in the election of officers of his country.

The statute above quoted also provides that the prospective jurors be selected from the assessment rolls of the county. The jury commissioners selected them only from the roll of real estate owners. It is claimed that they should also have been selected from the roll of personal property owners.

There is no violation of the statute by selecting from either the real estate roll or the personal property roll. Undoubtedly most of the names on the real estate roll would also appear on the personal property roll, and to secure those who own only personal property would require a checking of the real property roll to see that they did not also appear thereon. It might seem to the jury commissioners that one who owned or was buying his home would make a better juror than would a mere transient who owns an automobile.

The defendant also claims that the percentage of people with Spanish-American names living in the county was greater than the percentage of such names on the jury list. Utah has long been noted as a melting pot of nationalities. In fact, on the campus of Brigham Young University, the largest university in the state, more foreign languages are taught and spoken than on any other university campus in the world. Because intermarriage between Spanish-speaking people and other races is not prohibited by law, it is practically impossible to tell from a name what the ancestry of a person may be. Besides, this defendant is a Negress, and it is difficult for me to think that she would get a better trial from people who may have descended from Spanish-speaking ancestors than she would have from any other group of jurors.

She relies on the claimed proposition that prejudice is presumed when the jury com-

missioners do not select nonvoting legal voters, non-home-owning taxpayers, and descendants of Spanish-speaking ancestors according to a fixed percentage of such people living in the county. This claim seems to me to be unworthy of further discussion. However, if one is interested in pursuing the matter, an annotation is found in 166 A.L.R. at page 1422 wherein it indicates that unless there is an intentional, planned, and deliberate exclusion of or discrimination against members of a particular group, no constitutional right of a defendant is involved. There is nothing in this case to indicate or even suggest that there was any effort on the part of the jury commissioners to exclude any class of people from the jury list or that the defendant did not have a fair and impartial jury before whom she was tried.

She makes one further claim of error, and in my opinion that is the only one which has any merit whatsoever. That claim of error is that there were many names on the present jury list which had been on the list returned the year before. The statute above set out provides that the new list shall be chosen as far as practicable from those who were not returned on the jury list of the next proceeding year. The purpose of the provision is to prevent the same people from serving continuously as jurors. In fact, an exemption is given by the statute [1] to any juror who was drawn on a regular panel and who served as a juror within a year prior to his being called again.

When the name of a prospective juror lies idle on the master jury list, and he is not called to active duty for that year, I can see no prejudice to a defendant simply because the same name happens to be chosen by jury commissioners as a prospective juror for the succeeding year.

The harm would be occasioned if the jury commissioners failed to make the selection themselves and attempted to delegate that duty to someone else, such, for example, as the jury commissioners of the prior year. See 50 C.J.S. Juries § 158 a, page 882. There is no proof that the jury commissioners did not examine the qualifications of each and every prospective juror appearing on the current list and place his name thereon as a matter of their own choice. In fact, the jury commissioners have served continuously as such for fifteen years, and where they selected a name last year, they do not delegate their duty to others by using that name a second time.

This court has heretofore held that the statutory provisions relating to the drawing and summoning of jurors are directory and not mandatory. See State v. Distefano, 70 Utah 586, 262 P. 113 (1927); Meyers v. Second Judicial District Court, 108 Utah 32, 156 P.2d 711 (1945). This is in line

1. Section 78-46-10, U.C.A.1953.

with the general law as set out in 50 C.J.S. Juries § 164.

The work of the jury commissioners in selecting some 2,000 potential jurors as required by statute[2] involves a great deal of time and effort; and when they have selected a list consisting of competent, fair, and impartial men and women, their work should not be held for naught merely because there was another method which might have been used.

· For the reasons stated above, I concur in holding that the trial court was correct in refusing to quash the panel.

CALLISTER, J., concurs in the concurring opinion of ELLETT, J.

---

2. Section 78-46-18, U.C.A. 1953.