Lorin **FACER, Plaintiff and Appellant,**

v.

**R. Lee ALLEN, Allen L. Jensen, James J. White, and Box Elder County, Defendants and Appellees.**

No. 960463.

Supreme Court of Utah.

May 12, 1998.

Phillip W. Dyer, Salt Lake City, for plaintiff and appellant.

Karra J. Porter and Nathan D. Alder, Salt Lake City, for defendants and appellees.

HOWE, Chief Justice:

Lorin Facer, a former justice court judge, complains that the Box Elder County Commission abolished the precinct in which he held office within ninety days before the 1994 general election in violation of Utah Code Ann. § 17–5–212(3) (1994),[1] and thereby deprived him of the right to run as a candidate in an unopposed retention election as provided by Utah Code Ann. § 78–5–134(4) (1993). The trial court found no violation and granted summary judgment in favor of the County. The judge appeals.

## FACTS

In 1991, plaintiff Lorin Facer was appointed to a four-year term as justice court judge of the Box Elder County South Precinct. His term ended in February of 1995, and he decided to run for another term in the general election to be held on November 8, 1994. Accordingly, in January of 1994, the Judicial

Council certified him to stand unopposed in a retention election. In February, the County published a notice of the upcoming retention election. Judge Facer filed his candidacy and paid his filing fee on March 7, 1994.

On September 6, 1994, only sixty-two days before the November 8 election, the Box Elder County Commission passed a resolution combining the north and south precincts into one, effective the first Monday in February 1995, thus eliminating one justice court judgeship. On September 29, the County officially notified Judge Facer that his name had been removed from the ballot and refunded his filing fee. The next day he requested the county clerk reinstate his name on the ballot. Acting on the advice of the county attorney, the clerk denied the request. Judge Facer then petitioned the district court to have his name included on the ballot, arguing that the County violated section 17–5–212(3), which provided: "No precinct or election district shall be established or abolished, nor may the boundaries of any precinct or district be altered or changed in the ninety days prior to any election." The court heard oral arguments and denied his petition in a memorandum decision on October 20, 1994, stating:

[Section] 17–5–212(3) was intended to prevent the re-drawing of election district lines in such a manner as to influence the outcome of votes in contested elections. However, to the extent this section applies to justice court precincts, the changes contained in the ordinance do not abolish the precinct, nor alter or change its boundaries, within 90 days before the election.

Judge Facer then moved for and was granted leave to amend his complaint to pursue a claim for wrongful discharge. He then sought to depose the county commissioners in order to show bad faith in his dismissal. The County subsequently moved for summary judgment, which the district court granted, stating that the court "interprets the doctrine of legislative immunity to bar an inquiry into the motives for a commissioner's vote."

---

1. In 1995, the legislature repealed section 17–5–212 and substituted section 20A–5–303(3). We will refer to the relevant statutes as they were numbered at the time this case arose in 1994.

## ANALYSIS

■ Summary judgment is proper only where there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 368 (Utah 1996). "The interpretation of statutes poses a question of law, which this court reviews for correctness and without deference to the lower court's conclusions." *Zoll & Branch, P.C. v. Asay*, 932 P.2d 592, 593 (Utah 1997) (citing *Bonham v. Morgan*, 788 P.2d 497, 499 (Utah 1989)).

### Did the County Act in Violation of Utah Code Ann. § 17–5–212(3)?

The parties do not dispute that the County passed the resolution to combine the two precincts on September 6, 1994, less than ninety days before the November 8, 1994, election. The County contends, however, that section 17–5–212(3)'s prohibition against abolishing "precincts" within ninety days prior to an election applies only to "voting or election precincts" (sometimes referred to as voting or election districts) and does not refer to precincts in which justice courts are established. The County further argues that the September 6 resolution did not violate section 17–5–212(3) because the effective date of the resolution combining the precincts was the first Monday of February 1995, after the November 8, 1994, election. We will address these contentions in turn.

### A. Meaning of "Precinct"

Section 17–5–212(3) had a forerunner in the statutes of the Utah Territory. The Compiled Laws of Utah of 1888, ch. VI, § 187, subsection 4, provided that the county courts (the equivalent of today's County Commissions) shall have the power "[t]o establish, abolish and change county election precincts, but no such precinct shall be established or abolished, or the boundaries of any precinct changed within thirty days prior to any election." Later, the first state legislature enacted a statute which empowered the Board of County Commissioners in each county "[t]o establish, abolish and change election precincts, ... but no election precinct shall be established or abolished, or the boundaries of any precinct or district

changed within ninety days prior to any election." 1896 Utah Laws CXXXI, § 21(3). In both of these statutes, the terminology used was "election precincts," which meant a small geographical unit where a person could register to vote and where there would be a polling place. *See generally* ch. CXXV (governing elections) and ch. CXXXI (governing registration to vote), Laws of Utah 1896 which refer to "election precincts."

However, beginning in 1898, the terminology changed. Section 12–3–511(2) of the Revised Statutes of Utah (1898) provided that the Board of County Commissioners in each county had the power:

> To establish, abolish, and change election districts ...; *provided,* that no precinct or election district shall be established or abolished or the boundaries of any precinct or district changed, within ninety days prior to any election; *provided further,* that no election district shall be divided between two or more precincts or municipals wards.

(Emphasis in original.) It is important to observe that the 1898 statute no longer employed the terminology "election precincts," which had been used in the 1888 and the 1896 statutes. Instead, the terminology used is consistent with the statutes governing elections in the Revised Statutes of Utah (1898) in which the small units which had previously been referred to as "election precincts" were now referred to as "election districts." *See* Revised Statutes of Utah § 18–4–44 (1898). The last *proviso* in section 12–3–511(2) (1898), "that no election district shall be divided between two or more precincts," clearly indicates that an election district and a precinct are different political units.

The officers of a precinct were named in Revised Statutes of Utah § 12–4–544 (1898), which provided:

> The officers of a precinct are one justice of the peace and one constable. The Board of county commissioners of each county, as public convenience may require, shall divide their respective counties into precincts for the purpose of electing justices of the peace and constables.

All of these aforementioned statutes in the 1898 Revision are in accord with article XI, section 1 of the Utah Constitution which provides that "[t]he several counties of the Territory of Utah, existing at the time of the adoption of this Constitution, are hereby recognized as legal subdivisions of this State, and the precincts, and school districts, now existing in said counties, as legal subdivisions thereof. . . ." The article makes no mention of election districts but speaks instead of precincts as legal subdivisions of the county.

Section 17–5–212(3)(1994) contains the identical prohibition that was contained in section 12–3–511(2) (1898). Both statutes refer to "precinct or election district," making it clear that these terms are not merely alternative designations for the same unit. Indeed, such an assumption would contradict the constitutional definition of precinct. Furthermore, from 1898 down to 1993, our statutes on elections used the term "election district" or sometimes "voting district" to refer to that small unit where voters cast their ballots at a polling place. *See* Utah Code Ann. §§ 20–2–1 to –30 (1991)[2] and 20–7–1 to –43 (1991).

In *State v. Beasley,* 22 Utah 2d 423, 454 P.2d 880 (1969), a criminal defendant appealed her conviction contending that the jury had been selected from a master jury list that had been compiled in violation of Utah Code Ann. § 78–46–18 (1953), which provided that "[n]ames shall be selected as far as practicable from the several precincts of the county in proportion to the number of votes cast therein." In affirming defendant's conviction, this court wrote:

> It would appear that the term "precinct" as used in the Constitution and the statute was meant to apply to a political subdivision originally having to do with law enforcement and maintenance of the peace. . . . However, *the precinct is not synonymous with the voting district,* and in fact the precinct may embrace two or more voting districts.

22 Utah 2d at 426, 454 P.2d at 881 (emphasis added) (footnote omitted).

■ We therefore hold that the prohibition against abolishing precincts within ninety days preceding an election contained in section 17–5–212(3) applies to that subdivision of the county referred to in the Constitution and the statutes as a precinct in which a constable and justice court judge (formerly justice of the peace) serve, and that precincts are separate and distinct from election districts which are also named in that same section.

### B. Effective Date of Resolution

The County contends that its resolution combining the north and south precincts adopted on September 6, 1994, did not violate the ninety-day prohibition contained in section 17–5–212(3) because the effective date of the resolution was the first Monday in February in 1995, after the general election held on November 8, 1994. The County relies on (1) section 17–15–1, which provides that a county ordinance "may take effect at a later date than" fifteen days after its passage if "so provided therein," and (2) *Board of Education v. Hunter,* 48 Utah 373, 382, 159 P. 1019, 1022 (1916), where we quoted approvingly from a treatise that statutes passed to take effect at a future date should be construed, as a general rule, "as if passed on that day and ordered to take immediate effect." Thus the County argues that the two precincts were not "abolished" before the election because both continued to exist and operate as justice court precincts until Judge Facer's term of office expired on the first Monday in February 1995.

As we have pointed out earlier, the ninety-day prohibition contained in section 17–5–212(3) had its genesis in section 12–8–511(2), Revised Statutes of Utah (1898). At that time, certificates of nomination of candidates for precinct offices had to be filed with the county clerk not more than sixty days nor less than fifteen days before an election. Revised Statutes § 18–3–828 (1898). Candi-

---

**2.** In 1993, the legislature enacted a new election code, Title 20A, in which the term "voting precinct" is employed to describe what had formerly been "election district." However, no amend-ment was made to section 17–5–212(3), and thus the meaning of "precinct" in that section was not affected, but it maintains the same meaning it has had since 1898.

dates were nominated by delegates to conventions of political parties or by a petition signed by at least fifty voters. Revised Statutes of Utah §§ 18–3–822 and –825 (1898). Thus, in the ninety days preceding an election, the political parties would be holding their conventions to nominate candidates for the various offices to be filled, or persons desiring to run for office but not nominated by a convention of a political party, would be gathering the required signatures of voters. In order to give stability to this nomination process, the legislature enacted section 12–3–511(2) (1898). It seems obvious that candidates for precinct offices should not be subjected to the risk that while they are seeking nomination, the precinct may be abolished or the boundaries altered so as to defeat or affect their chances for election. Also, after candidates have been nominated, the County Commission should not be able to abolish precincts or alter precinct boundaries if they disapprove of the candidates. Thus it was the legislative intent that during the ninety days preceding an election when persons were preparing to run, no changes should be made in precincts which would frustrate the nomination, filing, and election process.

While the timetable of the election process is not the same today as it was in 1898, the need for stability in the process has not changed. Here, Judge Facer had been certified by the Utah Judicial Council to stand unopposed in a retention election in November 1994. The County had published a notice that a retention election would be held. Judge Facer paid the required filing fee. A Voter Information Pamphlet had been prepared for distribution by the Lieutenant Governor, which showed Judge Facer standing for retention election. The election process was well along its path when, sixty-two days before the election, the Box Elder County Commission abolished Judge Facer's precinct, thereby reversing all that had been done. The disruption to the election process could not have been greater.

This disruption, which we perceive the legislature was prohibiting by enacting the ninety-day protected period, cannot be avoided by simply delaying the effective date of the abolishment of the precinct until after the election. The disruption to the election process is the same. Indeed, in the instant case, the County removed Judge Facer's name from the ballot on the ground that no election should be held for an office which would not exist when his new term of office was to commence. We therefore conclude that the County Commission violated section 17–5–212(3) when it combined the north and south precincts by its resolution of September 6, 1994, even though the resolution was not to take effect until the first Monday in February 1995.

## CONCLUSION

Under section 17–5–212(3), the County had no authority to abolish a precinct within ninety days prior to the 1994 election. The removal of Judge Facer's name from the November ballot due to the combination of the precincts constituted a prohibited pre-election change. Consequently, the trial court erred in its grant of summary judgment. Judge Facer was entitled to run as a candidate for the four-year term extending from February of 1995 to February of 1999. The County's illegal action has damaged him accordingly. We therefore reverse the grant of summary judgment and remand this case to the trial court with instructions to fashion an appropriate remedy for him.

Reversed.

DURHAM, Associate C.J., and STEWART, ZIMMERMAN and RUSSON, JJ., concur in Chief Justice HOWE'S opinion.