UNITED STATES of America,
Plaintiff,

v.

Michael Albert THOMAS, John Alex
Becker, and James Anthony
Thomas, Defendants.

Crim. No. 13496.

United States District Court
N. D. California, N. D.

March 11, 1963.

In response to an affidavit by one Herbert A. Rigge, an investigator for the IRS, the United States Commissioner issued a search warrant, the interpretation of which is crucial to this motion. Said warrant bore the following caption:

United States of America

vs.

Those certain premises located at 6933 Florin-Perkins Road, Sacramento, Calif., and more particularly described as consisting of a one-story frame house, pink in color, and outbuildings occupied by ALBERT MICHAEL THOMAS

The body of the warrant stated, *inter alia,* that the affiant had reason to believe that,

"on the premises known as the *residence* of ALBERT MICHAEL THOMAS located at 6933 Florin-Perkins Road, Sacramento, California," [Emphasis added.]

certain unregistered distilling apparatus was being concealed.

E. Richard Walker, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Morgan & Moscone and Charles O. Morgan, Jr., San Francisco, Cal., for defendant John Alex Becker.

Leonard P. Burke, Sacramento, Cal., for defendants Michael Albert Thomas and James Anthony Thomas.

HALBERT, District Judge.

This is a criminal prosecution for an alleged violation of the federal laws relating to distilled spirits (Chapter 51 of Title 26 U.S.C.). Defendant John Alex Becker has moved, pursuant to Rule 41 (e) of the Federal Rules of Criminal Procedure, to suppress certain evidence which was seized by the Alcohol and Tobacco Tax Division of the Internal Revenue Service on October 12, 1962. Becker has been charged, in a three-count indictment, with violations of §§ 5601(a) (1) [possession of an unregistered still or distilling apparatus], 5601(a) (6) [producing distilled spirits on prohibited premises], and 5601(a) (7) [unlawful production and use of materials fit for production of distilled spirits] of the Internal Revenue Code (Title 26 U.S.C.).

Pursuant to said warrant, a number of state and federal agents drove to the address noted in the warrant. The premises included an extensive farm area, together with some five buildings located within the 29.03 acres covered by a deed, dated December 6, 1955, by which the property was conveyed to Cleopatra Thomas, daughter of Albert Michael Thomas. Most of said property was outlying grazing land, and we are here concerned only with an area of approximately 6.91 acres.

Within said area, a driveway leads directly to the home in which Albert Michael Thomas lives. A number of the agents searched the home, but nothing was seized therefrom. Another road, leaving Florin-Perkins Road some 150 feet to the north of the driveway to the Thomas residence, led to some buildings in back of the residence. This road was separated from the Thomas residence by a wire fence, and the entrance to it was obstructed by a strand of wire. The remaining agents went to this road, and removed the obstructing wire by driving

through it. The road led back to an old building some 500 feet to the rear of the Thomas residence. This building, a dilapidated shack, was known as the "old Marcus residence," having been inhabited by one John Marcus until his death some three or four months prior to the events herein.

When the officers arrived at the shack, the door was locked. Agent Rigge, in his affidavit, apparently had sought to acquire a warrant which would cover the shack. As part of the reasons for the issuance of the warrant, he had indicated that he had seen a "still pot" and a "fermenter" typical of the type used for fermenting materials. The "fermenter" had been approximately 100 yards in front of the shack, and the "still pot" was directly in front of the shack. The door to the shack being locked, one of the agents pushed it open. Prior to pushing open the door, "[t]here was something said," but there was no knock on the door. Upon making entry into the shack, the agents seized a number of items therein, and the arrests were immediately made, "at the time [the agents] saw a still in operation." One of the persons arrested was Becker.

Becker has raised two basic issues in support of his motion to suppress. He contends that the search and seizure were made on premises not covered by the search warrant and that therefore no search warrant in fact existed for the search and seizure. He also contends that the warrant, even if it were sufficient to cover the premises searched, was improperly executed, by the failure of the agents properly to identify themselves, and by their forcible entry into the premises without the consent of the owner thereof. The Government contests both of these contentions, and, in addition, raises the claim that Becker has no standing to object to an allegedly improper search and seizure of the premises herein.

■■ As to the question of standing, the law has been recently set forth by the United States Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Prior to that decision,

> "[t]o establish 'standing,' Court of Appeals ha[d] generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics [indictments] like those in the [Jones] indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what ha[d] been the conventional standing requirement ha[d] been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him." (Jones, supra, 362 U.S. at 261–262, 80 S.Ct. at 731)

The Supreme Court enunciated the true rule in Jones, 362 U.S. at 261, 80 S.Ct. at 731, there saying that,

> "[i]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at some one else."

Becker contends that the search and seizure herein were directed against him. There is no showing by Becker that he was lawfully on the premises of the "old Marcus residence." Nor is there an assertion that the seized property belonged to Becker. On the basis of such a state of the record, and noting the rule that a party making a motion to suppress evidence has the burden of proving facts sufficient to sustain his motion (Wilson v. United States, 10 Cir., 218 F.2d 754, 757), the Government argues that, although there might possibly exist facts sufficient to support Becker's contention, he has not carried the burden of setting them forth on this motion.

■■ It is to be noted, however, that one of the counts under which Becker has

been indicted charges possession of an unregistered still. The Jones case noted specifically the problems involved in a case where all that need be shown is possession. At page 263 of 362 U.S., at page 732 of 80 S.Ct., the Supreme Court stated that,

"[t]he same element in this prosecution which has caused a dilemma, i. e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged. * * * The possession on the basis of which petitioner is to be * * * convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e) [of the Federal Rules of Criminal Procedure]."

Since possession is charged in one of the counts of the indictment herein, the more general language of the Jones case, at page 267 of 362 U.S., and at page 734 of 80 S.Ct. that standing to challenge a search and seizure cannot be found in "those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched," is inapplicable. Such language is applicable only in cases where the crime alleged is other than that of possession (Cf. United States v. Romano, D.C., 203 F.Supp. 27).

■ The Government relies upon Ramirez v. United States, 9 Cir., 294 F.2d 277 in support of its contention that Becker

"must at least claim that he owned the seized property, that he had a proprietary or possessory interest in it, or that it 'belonged' to him." (294 F.2d at 281).

Although the Ramirez case appears to involve an overly restrictive reading of the Jones case, this Court would be bound thereby, since the Ramirez case was decided by the Court of Appeals for the Ninth Circuit, were it not for two other Ninth Circuit holdings which appear to be directly contrary to Ramirez (Plazola v. United States, 9 Cir., 291 F.2d 56; and Contreras v. United States, 9 Cir., 291 F.2d 63). This Court will follow what appears to it to be the rule of the Jones case as interpreted in Plazola and Contreras. See also: United States v. Holt, 6 Cir., 306 F.2d 198; United States v. Eldridge, 4 Cir., 302 F.2d 463; United States v. Paroutian, 2 Cir., 299 F.2d 486; Monnette v. United States, 5 Cir., 299 F. 2d 847; Henzel v. United States, 5 Cir., 296 F.2d 650; Foster v. United States, 8 Cir., 281 F.2d 310; United States v. Festa, D.C., 192 F.Supp. 160; and United States v. Pisano, D.C., 191 F. Supp. 861.

■ As to Becker's argument that the search warrant herein was insufficient to include the "old Marcus residence," the Court notes that a substantial distinction exists between the caption of the warrant and the description of the property to be searched contained in the body of the warrant. The comparison, eliminating unnecessary language, is of "premises, described as house, and outbuildings, occupied by Thomas," as opposed to "premises known as residence of Thomas." Preliminarily, the Court notes that under no stretch of the imagination could the description in the body of the warrant be construed to include the "old Marcus residence." That shack was clearly not the residence of Albert Michael Thomas. Therefore, the only basis upon which the search which was undertaken might fall within the scope of the warrant would be through the caption thereof. Specifically, the shack which was searched must be found to be an "outbuilding" of the Thomas residence, in order for the warrant to support a search thereof.

It has been held that captions are essential parts of search warrants (United States v. Nestori, 9 Cir., 10 F.2d 570), and that reference thereto is properly made. The substantive question is thus reached. In connection with said point, it is worth noting that the Government is forced to the unenviable position of contending that the "old Marcus residence" is within the curtilage of the

946

Thomas residence, for purposes of coverage of the search warrant, but that said shack is still sufficiently distinct from the Thomas residence as not to fall within the protections of the Fourth Amendment and of Title 18 U.S.C. § 3109 regarding the execution of search warrants. A narrow line is thus drawn.

■ Three facts of impelling significance stand out in this proceeding, and dictate the Court's conclusion as to the scope of the search warrant here involved. They are as follows: (1) the "old Marcus residence" was situated some 500 feet to the rear of the Thomas residence; (2) access to the Marcus shack was normally, as in this instance, made by use of a road completely separate from the driveway leading to the Thomas residence; and (3) the Marcus shack and the Thomas residence were separated from each other by a lot containing gardens and grapes, a wire fence, an open parking area and a reservoir swimming pool. Whether or not any one of the above facts would be sufficient to eliminate the Marcus shack from the ambit of the warrant for search of the Thomas residence "and outbuildings," it seems clear that all three taken together are sufficient to do so.

■ Accepting the basic tenet in this substantive area, that it

"is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended," (Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 417, 69 L.Ed. 761)

the Court notes several holdings in which the search of premises, pursuant to search warrants and under circumstances ostensibly similar to those of the instant case, have been upheld. None of them, however, reach quite the degree of remoteness indicated by the present facts. Thus, in Sasser v. United States, 5 Cir., 227 F.2d 358, the Court authorized a search, pursuant to warrant, where the warrant denominated a "barn and other outbuildings." The Court noted that the

language of the warrant was extremely vague, but concluded that no prejudice had been shown, in view of the fact that only the barn was searched. In Sparks v. United States, 6 Cir., 90 F.2d 61, under a warrant for search of "the John Harrison Farm, premises of Ed Sparks," the Court held the above description to be reasonable where it correctly described the premises, although the name of the farm was incorrect. In Fine v. United States, 6 Cir., 207 F.2d 324, the Court held that a warrant for the "premises" and "place named" was sufficient to permit the search of a shed some 20 feet to the rear of a house, noting that said terms are "broader than a mere description of the house and certainly include the curtilage." In each of these cases, some reasonable basis existed for the challenged search as being made under the terms of the warrant. No such basis exists in the present situation.

In view of the combination of the three facts previously set forth by the Court, and without attempting to set forth any definitive statement as to the furthest extent of the curtilage of the Thomas residence, the Court finds that the "old Marcus residence" was not within the curtilage of the Thomas residence and was not an outbuilding thereof, and the Court further finds that the warrant was insufficient to validate the search herein challenged. Having made such a finding, the Court need not consider Becker's second contention, that the search warrant was improperly executed (See: Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332).

The finding that the search of the "old Marcus residence" was not permitted as falling within the scope of the search warrant does not, however, inexorably lead to the conclusion that Becker's motion to suppress must be granted. The Fourth Amendment to the Constitution of the United States, by its terms, sets forth the right of the people to be secure, against unreasonable searches and seizures, in their "persons, houses, papers, and effects." The search of which complaint is here made was not of Becker's

person or of his papers. Nor, although the *indictment* charges him with unlawful possession of certain property, was the alleged illegality of the search related to the fact that said property was seized. The search was of the "old Marcus residence." The allegation of illegality in connection with the instant search stems from Becker's contention that a "house," as that term is used in the Fourth Amendment, was searched.

In connection with said contention, Becker specifically disavows any argument that the "old Marcus residence" falls within the curtilage of the Thomas residence (Cf. Fine v. United States, supra; Roberson v. United States, 6 Cir., 165 F.2d 752; and Walker v. United States, 5 Cir., 125 F.2d 395). Indeed, any such contention would necessarily meet with problems similar to those experienced by the Government with reference to its position concerning the applicability of the search warrant to the search in question. By making such an argument, Becker would indirectly be supporting the position that the search warrant was sufficient to cover the "old Marcus residence." The Court has already made a contrary finding.

 It is a basic tenet of the law of search and seizure that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields," (Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898). The Court of Appeals for the Ninth Circuit has noted a similar policy with reference to buildings detached from a residential structure (Carney v. United States, 9 Cir., 163 F. 2d 784; and see Koth v. United States, 9 Cir., 16 F.2d 59; Gay v. United States, 9 Cir., 8 F.2d 219; Vaught v. United States, 9 Cir., 7 F.2d 370; and Earl v. United States, 9 Cir., 4 F.2d 532). Parenthetically, the "detached building" doctrine which has been adopted by this circuit appears to eliminate the more general judicial construction of the term "house" to include undescribed buildings within the curtilage (Compare Carney v.

United States, supra, which permitted the search, without a warrant, of a garage which was detached from the dwelling house, with Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, prohibiting a search without a warrant where the garage was adjacent to the building.). For purposes of the instant proceeding, it may be assumed that the "open fields" doctrine and the "detached building" doctrine have overlapping application. The Marcus shack can be separated from the operation of either of these doctrines, if at all, solely through its character as a "house."

 The mere fact that a house is temporarily unoccupied is insufficient to cause that building to lose its character as a house. The protection of the Fourth Amendment extends to periods of vacancy. Thus, a search without a federal warrant of a summer home for suspected violations of federal liquor laws has been held unlawful (United States v. Brougher, D.C., 19 F.R.D. 79), as has the search without a warrant of a barn, where the owner of a farm lived in town (Steeber v. United States, 10 Cir., 198 F.2d 615). In both of those cases, however, the general premises in question were designed for occupancy. The "old Marcus residence," although perhaps once designed as a dwelling house, had been indefinitely (and apparently permanently) abandoned for that purpose, and was being used solely as a shelter for a still. Since it had been so abandoned for use as, or in conjunction with, a dwelling, and since an abandoned shack shares none of the attributes of privacy of a home, an automobile, an office, a store, or a hotel room (See: Lanza v. New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed. 2d 384), it follows that the protection of the Fourth Amendment did not extend to the Marcus shack. The situation is similar to that described by the Court in United States v. Wilds, D.C., 87 F.Supp. 459, at 460:

> "The building in which the still was located has been referred to as a [residence], and such it may have been at one time. * * * But at

the time the federal officer went upon the premises, the building was within an open field * * *. The building did not have such proximity to the [Thomas] dwelling house, nor was it in such a state of care, nor was it devoted to such a use, as entitled it to be regarded as one of those outbuildings essential to the comfort and personal well being of a family. It was not, therefore, entitled to the protection of the Fourth Amendment. [Citing] Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 [supra], and Dulek v. United States, 6 Cir., 16 F.2d 275."

It is, therefore, ordered that defendant Becker's motion to suppress the evidence seized from the "old Marcus residence" be, and the same is, hereby denied.