**George Frank SIMPSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7427.**

United States Court of Appeals
Tenth Circuit.

Jan. 19, 1965.

Rehearing Denied May 28, 1965.

Pickett, Circuit Judge and Murrah, C. J., dissented from denial of petition for rehearing.

Jack R. Durland, Jr., Oklahoma City, Okl., for appellant.

LeRoy V. Amen, Asst. U. S., Atty., District of Wyoming (Robert N. Chaffin, U. S. Atty., District of Wyoming, on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.

LEWIS, Circuit Judge.

Appellant was convicted in the United States District Court for the District of Wyoming of a Dyer Act violation, 18 U.S.C. § 2312. On this appeal from the conviction he assigns as error the admission of evidence claimed to have been obtained through unlawful searches and seizures and the reception into evidence of particular prejudicial testimony regarding appellant's prior bad acts.

On the night of November 20–21, 1962, a 1962 Chevrolet Impala two-door sedan was stolen from in front of the home of its owner in Ashland, Kentucky. About one week later, on November 27, 1962, appellant, accompanied by a hitchhiker, Russell McMartin, drove the stolen automobile into Cheyenne, Wyoming. The two men proceeded to the Frontier Hotel, where McMartin registered for a double room. That evening, McMartin went to the local police station and told some officers there that he suspected the automobile appellant was driving was stolen. He had an Ohio certificate of title with him he had taken from appellant that purported to establish appellant's ownership to the automobile, and he asked the officers to examine the certificate to determine whether it was in order. McMartin then stated that appellant had attempted to sell the automobile at a very low price in three or four towns in Nebraska but that all prospective buyers had requested to see appellant's identification, which he had not produced. He also stated that appellant had suggested that he transfer the title to McMartin, who could sell the automobile because he did have identification, for which trouble McMartin would be generously paid. The officers examined the certificate of title and decided it had been "manipulated."

The officers, accompanied by McMartin, then set out to find appellant, and while looking for him they observed the automobile parked at a service station. At that time they made no search but did note the automobile to be a two-tone 1962

Chevrolet two-door sedan with Alabama license plates. Appellant was soon found sleeping in the hotel room, into which Mc-Martin admitted the officers with his key. After identifying themselves, the officers showed appellant the Ohio certificate, which he stated was the title to the automobile he was driving. The officers then conducted a perfunctory search of appellant and the room. Finding that appellant had neither money nor identification, they arrested him and took him to the police station where he was held for vagrancy and investigation of car theft. The automobile was towed to the police station to be held until it could be checked out. The officers had no warrant for the arrest and search.

On the next day Robert Gustafson, Special Agent of the Federal Bureau of Investigation, questioned appellant at the Cheyenne police station. The interrogation yielded little of value and Gustafson then entered and examined the automobile, which was being stored by the Cheyenne Police, and ascertained its license and vehicle identification numbers. Using the vehicle identification number so obtained, Gustafson sent inquiries to the F.B.I. office in Ohio and to Alabama and was able to determine that the automobile was stolen. Gustafson thereafter, on December 1, 1962, made a cellophane tape impression of the identification number and removed the license plate; both the impression and the plate were introduced as evidence against appellant. A federal warrant for appellant's arrest was obtained on November 31, 1962, two days after the initial examination of the automobile. No search warrant was ever obtained.

The F.B.I. investigation that resulted from Gustafson's findings produced most of the evidence used in the trial. Copies of registration papers from the State of Alabama were introduced to show appellant had obtained the papers so he could use them to procure the Ohio title certificate after he had altered the vehicle identification number on them to match that of the stolen automobile. There was also evidence, in the form of testimony

and two unnegotiated checks, showing that appellant had attempted to sell the automobile in Nebraska for a low price. In addition, the government was able to show that Frank Myland, the transferor listed on the Ohio certificate, had never owned a motor vehicle in the State of Ohio.

Prior to trial, appellant filed a motion to suppress evidence and a full hearing was held by the trial court during which each of the state and federal police officers testified as to his participation in the events leading to appellant's arrest and the several searches. The motion was denied.

 This record reveals to us a complete and continuing disregard by police officers, both state and federal, of the constitutional protections afforded appellant in regard to arrest, search and seizure. While the information furnished to the Wyoming police might well have served as probable cause for a federal arrest for a violation of the Dyer Act, it is difficult to visualize a justification for appellant's arrest and incarceration as a vagrant. Under Wyoming law a vagrant is defined as a person without any visible means of support and living an immoral or worthless life. 3 Wyo.Stat. § 6–221. Since the offense is a misdemeanor, an arrest without warrant is not justified unless the offense is committed in the presence of the officer or the elements of the offense are apparent by observation. See State v. George, 32 Wyo. 223, 231. P. 683. The purported arrest for "investigation" is unknown to the law of Wyoming. But we need not decide the lawfulness of the arrest for, even assuming, arguendo, that the original arrest was lawful it would not justify a search of an automobile remote in location. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. Nor can federal officers rely upon a state arrest for justification in conducting their own search as incident to the state arrest. Sirimarco v. United States, 10 Cir., 315 F.2d 699, cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032.

■ The searches by F.B.I. Agent Gustafson, both without warrant, were clearly unlawful. On November 28 he wrote down the license and vehicle identification numbers of the automobile; although he could easily observe the license number he had to enter the car to see the identification number. There can be no questioning that visual observations may constitute the fruits of an unreasonable search and seizure and be inadmissible on that ground, Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487, 489, and Gustafson's illegal entry into the car condemns the information gathered by virtue of such illegal entry, including material garnered as a result of the unreasonable search. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In the case at bar the inadmissible evidence encompasses not only the identification number obtained by Gustafson in the illegal search but also all subsequent information acquired because of the search, "the fruit of the poisonous tree," which includes the results of the F.B.I. investigation. See Staples v. United States, 5 Cir., 320 F.2d 817. And certain it is that the cellophane tape impression and the license plate, acquired at the second search on December 1, should not have been admitted.

■ The government, however, contends that since no objection was made to this evidence and since appellant's motion to suppress under Fed.R.Crim.P. 41(e), heard prior to the trial, did not detail this evidence, appellant has waived any constitutional claim he may have had and that the issue is not before the court. To support this ground for affirmance the government cites Williams v. United States, 10 Cir., 323 F.2d 90, cert. denied, 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605, where an F.B.I. agent had made a warrantless search, also while the defendants were confined in jail. This court there held that the issue was not before it because there was no motion to suppress and the objection to the disputed evidence was based upon incorrect grounds. Appellant here did make a timely motion to suppress evidence and, while the motion was general, the hearing was full and revealed the activities of federal officers. The constitutional violation was adequately protested.

■■ The government also contends that appellant has no standing to object to the search of the automobile since he had no right of ownership in it. Such a construction of the Fourth Amendment would totally negate the effect of the Weeks-McNabb [1] exclusionary rule in regard to automobiles. Federal officers could search cars at will and, of all defendants prosecuted for automobile theft, only those who actually owned the automobiles could raise Fourth Amendment objections successfully. Moreover, the proof of ownership would be sufficient to quash the prosecution for theft of the automobile. These constitutional rights belong to the guilty as well as the innocent. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. The sole prerequisite to a defendant's raising the Fourth Amendment issue is that he claim a proprietary or possessory interest in the searched or seized property. See Williams v. United States, 10 Cir., 323 F.2d 90, 94–95. Appellant certainly claimed a possessory interest in the car, and his lack of ownership was not established until after the search.

Appellant's further contention that he was prejudiced by testimony concerning his prior criminal record and activities need not be specifically considered. Such testimony was largely volunteered by the witnesses and need not recur. Responsibility for the careful examination of witnesses lies with the District Attorney, and ultimate control of the trial so as to avoid prejudice to the accused is the duty of the court.

The judgment of conviction is reversed and the case remanded for a new trial with instructions to suppress all evidence

1. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

obtained by the federal searches and attributable to such searches.

### On Petition for Rehearing

Before MURRAH, Chief Judge, and PICKETT, LEWIS, BREITENSTEIN, HILL and SETH, Circuit Judges.

LEWIS, Circuit Judge.

We granted oral argument upon the government's petition for rehearing in this case to give the full consideration of the court sitting en banc to the contention that Simpson was not "[a] person aggrieved by an unlawful search" within the compulsion of Rule 41(e) of the Federal Rules of Criminal Procedure. As stated in the factual recital of our opinion, the initial search was made by federal officers, without consent or warrant, of an automobile in the possession of Simpson for the purpose of obtaining evidence that the car was stolen and that Simpson's actual possession was thus unlawful. At such time Simpson was not under federal arrest nor was any federal criminal proceeding *in esse*. The second search was made after arrest but again without warrant or consent. The government makes no other claim of justification for either search than to merely state that the fruits of the search disclosed that Simpson's actual possession of the car was unlawful.

Except when viewed in retrospect the subject initial search, made as it was without arrest or pending charge, has every aspect of the classic but prohibited exploratory search for evidence of crime. See United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877. And to view the search in retrospect it becomes necessary for the government to bring forth the fruits of the search to sustain its validity. This principle of testing the reasonableness of a search has been rejected through an unbroken line of cases beginning at least as early as 1927. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. Unless actual possession of personal property is deemed of sufficient interest to invoke the enforcement of Rule 41(e) as a guard against encroachment upon the rights assured by the Fourth and Fifth Amendments, these basic and fundamental principles would become largely illusory as applied to the search and seizure of personal property.

But independent of the general principles which the government circumvents in attempting to deny appellant standing to suppress the fruits of the subject searches, we hold that the circumstances of this particular prosecution confer standing to invoke Rule 41(e) under the clear expressions of the Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. In *Jones* the accused was unlawfully in possession of narcotics. In the case at bar Simpson was in possession of a stolen car. Possession was the basis of the prosecution in Jones and possession is the basis for the conviction in the instant case, for as we recently stated in Reese v. United States, 10 Cir., 341 F.2d 90, 92: "It is well established that a jury may infer from the possession of a recently stolen automobile in another state that the possessor of the vehicle knew that it was stolen and that he transported it in interstate commerce." Said the Supreme Court concerning prosecutions "turning on illicit possession":

> "The same element in this prosecution which has caused a dilemma, i. e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged." 362 U.S. at 263, 80 S.Ct. at 732.

As we interpret Jones, the very nature of this prosecution accorded to Simpson the standing to invoke Rule 41(e) as a person aggrieved. Other courts have reached similar conclusions. See Contreras v. United States, 9 Cir., 291 F.2d 63, 65; United States v. Thomas, N.D. Cal., 216 F.Supp. 942, 945.

We adhere to our decision and deny the petition for rehearing.

PICKETT, Circuit Judge (with whom MURRAH, Chief Judge, joins, dissenting on rehearing).

The Government's petition for rehearing in this case presented important questions relating to search and seizure, and was heard by the Court, sitting en banc. After argument, although the evidence is without conflict that the automobile in question had been stolen and that the accused, on motion to suppress, did not establish that he had any property right therein or that he was in legitimate possession thereof at the time of the search, the majority of the Court concluded that the petition should be denied.

While I recognize that I am in the minority in my objection to the decision, I feel so strongly that not only new law, but bad law is being made, I am constrained to express my disagreement. I regret that I have been unable to convince all my associates that the decision is contrary to well settled principles of law, is unsupported by a single court decision, and will unnecessarily impose upon officers investigating Dyer Act violations (Title 18 U.S.C. §§ 2312, 2313), and other offenses in which stolen automobiles are involved, an intolerable strait jacket.

For Simpson to prevail on his motion to suppress, not only must it be concluded that for the purpose of identifying the automobile in question the taking of its serial number in his absence was an unreasonable search and seizure, but also it must be found that he has sustained the burden of proving that when the search was made, he had standing to complain. I am satisfied that the obtaining of the serial number from the vehicle under the circumstances of this case, did not constitute an unreasonable search any more than did the taking of the license number displayed thereon.[1] The

Fourth Amendment provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." By the terms of the Amendment, only unreasonable searches and seizures are prohibited. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 10 Cir., 151 F.2d 837, 169 A.L.R. 1413, aff'd 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; Draper v. United States, 10 Cir., 248 F.2d.295, aff'd 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Price v. United States, 10 Cir., 262 F.2d 684; United States v. One 1957 Ford Ranchero Pickup, 10 Cir., 265 F.2d 21; McDonald v. United States, 10 Cir., 307 F.2d 272. Whether a search is reasonable or unreasonable depends upon the particular circumstances of each case. For a search to be unreasonable it must be a violation of one's right of privacy. As said in United States v. Rabinowitz supra,

"The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." (339 U.S. at 66, 170 S.Ct. at 435.)

The only certain way to identify an automobile is by reference to its serial number. As in this case, the number can usually be obtained simply by opening the door and observing the number upon the door panel. We know, however, that the protection against unlawful searches and seizures extends to automobiles (Preston v. United States, 376

---

[1]. This Court has previously held that the observation of that which is open and patent does not constitute a search. Trujillo v. United States, 294 F.2d 583. See also Petteway v. United States, 4 Cir., 261 F.2d 53.

U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777),[2] still it seems to me that the obtaining of the serial number for the purpose of identifying the vehicle is not an unreasonable demand to make upon a citizen any more than is the taking of a license number or examining a driver's license. Stolen automobiles are moved rapidly from one state to another. The owner seldom has any information as to where the vehicle is or who stole it. The identity of the owner can be determined only by securing the identifying numbers and sending them to what might be termed a "clearing house" for information regarding stolen automobiles, or to the area where it is thought the vehicle is registered. The number in itself is not evidence of a crime, but it may lead to the identity of the true owner. In this case, the owner of the automobile testified as to the serial number of his automobile, as did a number of other witnesses who had transactions with Simpson relating to the vehicle. The Court holds that the owner was located, as were the other witnesses who identified the vehicle, through the use of the number alleged to have been unlawfully taken by the F.B.I. Agent, therefore all of the evidence obtained through them must be suppressed. A situation is created whereby, in most cases, the ownership of an automobile thought to have been stolen cannot be established. Possibly what I am saying is that the obtaining of a serial number from a motor vehicle is not a search at all. If it is not, we reach the same result as though it were a reasonable search within the meaning of the Constitution.

It is no answer to say that a rule contrary to that adopted here would permit an indiscreet officer to promiscuously search automobiles with immunity and that the laws must apply equally to the guilty as to those who are not guilty. If a search of an automobile is made without probable cause, one having the right to complain may recover damages and suppress any incriminating evidence which is seized.[3] Such remedies are equally available to a guilty person, provided he has the right to question the search.

My principal objection to the decision is that it wholly ignores the rule that a person challenging the legality of a search has the burden of bringing himself within the Constitutional protection. As I understand the holding, a person in possession of a stolen automobile, without any proof of ownership or right to possession, by merely stating that he is the owner, cloaks himself with the protection of the Fourth Amendment against search and seizure, and evidence taken from the vehicle, including the serial number, may be suppressed and the stolen vehicle, together with the seized material, ordered returned to the thief, who may then drive it away. F.R.Cr.P., Rule 41(e). No authority has been cited to support this view, and I have found none. The rule which excludes, because of an unlawful search or seizure, the use of evidence ordinarily relevant and competent, was recently analyzed by this Court in Murray v. United States, 333 F.2d 409. Following the general rule, Judge Seth, in clear and succinct language, announced the reasons for the rule, and pointed out that the evidence continued to be admissible until an accused has established that his rights have been invaded. To perpetuate this long-standing principle, it was incorporated in Rule 41(e), F.R.Cr. P. This rule authorizes "a person aggrieved" to move to suppress the use as evidence of property illegally seized. When such a motion is heard, the trial judge is required to decide issues of fact, one of which is the movant's standing to object to the search. The burden is upon the person seeking to take advantage of the rule to establish as a fact,

2. However, in Preston it should be noted that the Court was not dealing with a stolen automobile.

3. In addition, federal officers may, in proper cases, be subjected to criminal punishment for unlawful conduct in connection with a search. 18 U.S.C. §§ 2234, 2235, 2236.

at the time of seizure, that his rights were invaded.

The decision here is based upon the proposition that "the sole prerequisite to a defendant's raising the Fourth Amendment issue is that he claim a proprietary or possessory interest in the searched or seized property.", citing Williams v. United States, 10 Cir., 323 F.2d 90, cert. denied 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605. Apparently the majority construes the Williams case as relieving a person who, by way of a motion to suppress, challenges a search from the burden of proving his claim that at the time of the search he was legitimately in possession of the property searched. The Williams case stands for no such rule. After making reference to those who could avail themselves of the Constitutional protection, this Court said:

"This rule is particularly applicable where the property seized was taken from a stolen automobile to which the defendants had no title or legal right to possession. United States v. Serrano, 2 Cir., 317 F.2d 356; Anno. 78 A.L.R.2d 246, § 8; Anno. 50 A.L.R.2d 531, § 10; Jones v. United States, supra, [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697] recognize this principle." (323 F.2d at 95.)

The fallacy of the rule announced here may be illustrated by a case where thieves break into a home. Police, having no cause to believe a crime is being committed therein, decide to make inquiry. They are met at the door by one of the unknown thieves who tells the police that it is his home, and refuses to admit them without a warrant. The police leave, but later return and force their way into the home and find evidence which leads to the identity and arrest of the thieves. Later the thieves move to suppress the evidence seized in the house and all evidence resulting therefrom, contending that at the time of the search the officers did not know that the claim of ownership was untrue. In essence, this is the claim made in the case at bar. Common sense alone dictates that such a contention is absurd. It is contrary to the time-honored rule which requires the person attacking a search to prove its invalidity and instead shifts the burden to the prosecution to establish its validity. It is squarely contrary to the holding of Murray v. United States, supra, which upheld a denial of a motion to suppress in these words:

"In the federal courts, the exclusion of evidence secured by an illegal search is the method adopted to enforce the right of privacy provided in the Fourth Amendment to the Constitution. This was announced in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and subsequently was incorporated in Rule 41(e) of the Federal Rules of Criminal Procedure. Whether this is the best enforcement or protective device has been frequently debated. Thus the purpose is to deter unlawful searches, and to protect indirectly the constitutional rights of the accused. Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. The supression of such evidence is thus an exception to the general rule that all relevant evidence should be admitted. *Evidence sought to be excluded is admissible until the accused has established that his rights under the rule have been invaded.* The burden to establish facts necessary to sustain his position is on the person seeking to avail himself of the rule. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Wilson v. United States, 218 F.2d 754 (10th Cir.). The contentions of appellant here concern the status of the premises searched rather than the status of the property seized during the search. The appellant was not on or near the premises when they were searched.

\* \* \* \* \* \*

"We held in Coon v. United States, 36 F.2d 164 (10th Cir.), that the legality of a search can be raised by a 'lawful occupant' of the premises searched, that is by the person whose

rights have been invaded. Other cases from this circuit refer to the interest or ownership of the objects seized, *but all require that interest be established by the person who claims it to have been violated.* The appellant's use of the premises rented by R. L. Thomas and his use of the unrented bedroom on the second floor at 3411 Michigan Avenue was an occasional one for recreation primarily. The general premises were owned by appellant's parents, and we find that appellant has not established. on the record before us that his right of privacy was invaded by the search. Appellant has not met his burden to show facts demonstrating that his personal rights were involved. * * * " (Emphasis supplied). (333 F.2d at 411–412).[4]

In Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, the Court said that "Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' People of State of N. Y. ex rel. Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 190, 51 L.Ed. 415. * * * Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy." The rule could not be more clearly stated. The exclusionary rule as stated in Jones and Murray is a means of effectuating the protection of the right of privacy of individuals. These cases hold that a per-

son challenging the legality of a search must allege and prove that he was the victim of an invasion of privacy. The only relevant significance of the Jones decision is that if a person is legitimately on the premises when the search was made, the Constitution protects him. The Court recognized that in such cases the law existing at the time required a showing of ownership or a substantial possessory interest in the property searched. The proof was that Jones was not a trespasser on the premises searched, but was lawfully there as an invitee, a guest, or possibly a licensee of the person entitled to possession. In any event, he was legitimately on the premises which was adequate to give him standing to take advantage of the constitutional protection against unlawful search and seizure, but the opinion suggests no changes in the rule relating to the burden of proof. In holding that under these circumstances Jones was an aggrieved person and had standing to raise the constitutional issue, the Court stated: "No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on the premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. *This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched."* (Emphasis supplied.) (362 U.S. at 267, 80 S.Ct. at 734.)

The holding of the Jones case regarding standing was premised on two separate and distinct grounds. First, that situation discussed above in which stand-

4. The Supreme Court summarily vacated the judgment in the Murray case and remanded it to the Court of Appeals for further consideration. Murray v. United States, 85 S.Ct. 1345. The reason for the Supreme Court's action does not appear in the order, but the record discloses that in support of his motion to suppress Murray established that the premises searched belonged to his parents and that he was free to use them, and often stayed there over night. It

must be assumed that the judgment was vacated because the undisputed evidence showed that Murray's presence on the premises searched was "legitimate." The reversal of the conviction does not in any manner restrict, limit, or even refer to the rule which requires the defendant in a criminal case, when he seeks to suppress evidence because of an unlawful search, to sustain the burden of proof that he has *standing to complain* of the search.

ing is based upon the defendant's legitimate presence" in the premises searched, and second, that type of case in which standing arises by virtue of the nature of the offense charged. That is, in those offenses in which the allegation of ownership or possession usually required for the motion to suppress would be an admission of the sole essential element necessary to establish guilt. On petition for rehearing, the Court construes the holding on the latter point so as to confer upon Simpson the status of an aggrieved person because of the rule that possession of a recently stolen automobile is sufficient evidence from which a jury may infer the essential elements of the offense. See Reese v. United States, 10 Cir., 341 F.2d 90. However, Jones involved a narcotics prosecution, and that portion of the opinion conferring standing upon the defendant there and the reason therefor have no application in this case. The possession of narcotics in itself is a crime, but not so with a Dyer Act offense. The dilemma found by Judge Hand in Connolly v. Medalie, 2 Cir., 58 F.2d 629, and overcome by Justice Frankfurter in Jones, was that an accused, to be able to sustain a motion to suppress evidence, was forced to allege that he was the owner or possessor of contraband property—i. e. property, the mere possession or ownership of which, constituted the crime charged. Therefore, if the defendant failed to sustain the motion to suppress, he stood convicted by his own admission. But, the mere possession of a stolen car is not a crime within the meaning of 18 U.S.C. § 2312, nor does it, standing alone, establish guilt. The rule in Reese v. United States, supra, quoted by the Court is merely a rule of evidence which fixes the quantum of proof necessary to create a jury question.[5]

In neither aspect of its holding does the Jones case depart from the rule which requires a showing of standing as a prerequisite to a motion to suppress. To the contrary, it holds first that "legitimate presence" is a sufficient possessory interest in the premises searched to give standing, and secondly, it holds only that in the peculiar type of case where possession would both convict and confer standing, the affirmative allegation of ownership or possession ordinarily required to sustain the motion is not necessary. The standing is found because of the offense involved, and not because of any such allegation. This aspect of the Jones case should be limited in its application solely to that peculiar type of offense, and should not be extended to Dyer Act cases or similar cases as the Court would do.

No one contends in this case that Simpson owned or had a possessory right of any kind in the automobile. Admittedly the automobile was a stolen one. Simpson had no right to be in it in the first place, and acquired no better right to get back into it once he left it. He had no right to forbid anyone to enter it. At the hearing on the motion to suppress he offered no proof of his right of possession. The decision apparently turns upon his statement to officers prior to the search that he owned the automobile. If such an unsupported statement at the time of arrest establishes standing sufficient to invoke the protection of the Constitutional provision prohibiting unreasonable searches and seizures, it amounts to a nullification of the requirement that he prove his interest in the property by evidence produced at the hearing on the motion to suppress. Surely it cannot be contended that a thief in possession of an automobile has any greater right in the application of the rule than a trespasser on real property. The end result is that Simpson is permitted to use the very property which he stole as a cloak of immunity. Courts should always be diligent in preventing the lowering of the barriers which protect the individual liberties of our citizens, but

5. Contreras v. United States, 9 Cir., 291 F.2d 63, and United States v. Thomas, D.C.N.D.Calif., 216 F.Supp. 942, cited by the Court both involved offenses in which convictions may be based solely upon proof of possession, and hence are not authority for the position taken.

in the exercise of this diligence the personal and property rights of members of the public should not be completely overlooked for the benefit of those who have no regard for either. As said in United States v. Ventresca, 380 U.S. 102, at 112, 85 S.Ct. 741, at 748, 13 L.Ed.2d 684, it is vital that a system of justice be maintained which is "responsive both to the needs of individual liberty and the rights of the community." See, also, Hollingsworth v. United States, 10 Cir., 321 F.2d 342.

I would grant the petition for rehearing and affirm the conviction.