**David W. DODGE, Petitioner,**

v.

**John W. TURNER, Warden, Utah State Prison, Respondent.**

**No. C 77–67.**

United States District Court
D. Utah,
Central Division.

Sept. 29, 1967.

John D. O'Connell, Salt Lake City, Utah, for petitioner.

LeRoy S. Axland, Asst. Atty. Gen., for respondent.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

The petitioner David W. Dodge is presently incarcerated in the Utah State Prison, serving concurrent sentences of one to twenty years for the crimes of forgery and second degree burglary. A petition for writ of habeas corpus and a motion to file and proceed in forma pauperis were filed in this court. Deeming an evidentiary hearing to be required in the absence of an indication that the state courts had made such constitutionally meaningful findings as would render this unnecessary within the purview of 28 U.S.C. § 2254 as amended by Public Law 89–711, 89th Congress, November 2, 1966, 80 Stat. 1104, I granted leave to proceed in forma pauperis and following a pre-trial conference took evidence at a formal hearing at which the petitioner was permitted to appear personally and testify. Transcripts of proceedings in the state cases were also received.

The petition for a writ of habeas corpus alleges in substance that the judgments by reason of which petitioner is restrained of his liberty are void as being in violation of rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and that he has exhausted his state remedies. in attempting unsuccessful vindication of these rights. He states among other things:

"(a) That the judgment for Forgery was entered on a plea of guilty which was entered by your plaintiff, without his having had the benefit or representation of counsel; without knowledge of his rights and upon promises. of probation made by an agent of the. Utah State Adult Probation and Parole Department to your plaintiff and plaintiff's Father. Further that your plaintiff did not intelligently, competently nor understandingly waive: his right to counsel. Causing the plea. of guilty in the instant case to be made through misrepresentation the holding out of false hopes and other coercive methods.

"(b) That the judgment for Burglary in the Second Degree was entered upon conviction at trial wherein the evidence was submitted which had been obtain-

ed by illegal searches, such searches being made by police officers acting without probable cause or search warrants and not made incident to a constitutionally valid arrest. Further, said judgment was illegal in that the plaintiff was denied Due Process of Law and Equal Protection of the Law; in that some members of the jury panel were illegally excluded from the trial by jury by the trial judge because they failed to attain a certain score on a written test of intelligence. And Legal Aptitude."

■ The last stated claim relating to the jury is not pressed here and justifies no further notice.

■ The exhaustion of state remedies through appeal, State v. Dodge, 12 Utah 2d 293, 365 P.2d 798 (1961), and by denial of petitions for writs of habeas corpus in the Third Judicial District Court of the State of Utah, is not questioned by the state. And this is so, even though he has not challenged a 1964 conviction for forgery for which he has been ordered to serve a consecutive sentence following the expiration of the concurrent sentences. Tucker v. Peyton, 357 F.2d 115 (4th Cir. 1966). Cf. Rowe v. Peyton, 383 F.2d 709 (4th Cir. 1967). Nor should this circumstance preclude the determination of the validity of his imprisonment under the presently effective sentences. Ibid. See also United States ex rel. Watson v. Myers, 250 F. Supp. 292 (E.D.Pa.1966).

We come, therefore, to the question of whether both of the concurrent sentences which petitioner is now serving are critically infected by constitutional violations. First as to the forgery conviction:

I

In 1958 petitioner was charged with attempting to pass a forged check for $10.00 in an Ogden city store. He en-

tered a plea of guilty to the charge and was subsequently sentenced to one to twenty years in prison. During the entire proceeding he was without the benefit of counsel. He later procured counsel and sought to withdraw the plea of guilty but his motion to this end was denied.

The essential issue is whether petitioner knowingly, intelligently and voluntarily waived his right to have appointed counsel. Petitioner makes two basic arguments: (1) That he was never informed of his right to have appointed counsel provided at state expense, and (2) that he relied upon his father's statement that a promise had been made by the probation officer that probation would be granted if he would plead guilty. Respondent insists that petitioner was informed of his right to have appointed counsel and that no promise was or could have been made by the probation officer.

I find that while petitioner was indeed informed of his right to be represented by counsel,[1] he was not advised that if he could not procure one through his own resources the court would appoint a lawyer for him. On the contrary, the evidence is clear that the defendant had tried unsuccessfully to get his father to obtain a lawyer for him because he himself had no means to obtain one, and did not understand that the court would see that he got one even though he had no money.

■ The question of who would pay the expense was very important since it is reasonably clear that he could not have hired an attorney himself, and his father refused to do so for him until after his plea of guilty was entered. Then it was too late to do much good, because the court declined to permit the defendant to withdraw his plea. Respondent argues that petitioner must have known what the court meant because he was 18 years

---

1. The Court: You are charged with a felony in this instance. If convicted you can go to the penitentiary for a long time. Because of the seriousness of the charge, you are entitled to a lawyer at all stages of the proceedings and you are entitled

to time in which to determine how you want to plead. Do you have a lawyer?
 Mr. Dodge: No, sir.
 The Court: Do you desire a lawyer?
 Mr. Dodge: No, sir.

old and had seen his older brother in trouble with the law before. The reasoning is not convincing. This was petitioner's first offense. He was only 18 years old and his testimony that he wanted counsel but did not understand his right to have counsel appointed for him without the payment of fees is convincing. The principle of Berryhill v. Page, 349 F.2d 984 (10th Cir. 1965), is controlling:

> "In order to effectuate a waiver of the right to counsel, the record must plainly show that the accused was offered the assistance of counsel but intelligently and understandingly rejected the offer".

 One cannot knowingly and understandingly waive a right he does not know he has. The state cites several authorities to indicate a more flexible standard but all of them pre-date Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). There was no valid waiver of the right to counsel. Since petitioner was not represented by counsel at the time of the entry of his plea of guilty, the foregoing conviction cannot stand.

It is unnecessary to dwell separately upon petitioner's second ground. The preponderance of the evidence does establish that petitioner relied upon a statement by his father that probation had been promised him if he would plead guilty. The fact appears to be that the probation officer's indication to the father was not so positive and was more in the nature of an expectation or prediction of what the judge might do. Yet, the fact is that the information, accurate or inaccurate, thus relayed to the defendant, was an important factor in his decision to plead guilty. The father's interpretation, accurate or inaccurate, also likely was a determinate factor in the father's decision not to provide counsel for his son prior to plea. The vital importance of the right to counsel under the circumstances thus becomes even more apparent.

## II

The pre-trial order recites the following uncontroverted facts concerning the burglary proceedings and evidence considered therein:

The sequence of events surrounding the seizure of the evidence introduced in the trial for burglary was as follows: An officer of the Ogden police was dispatched to investigate a "suspicious car" parked in a residential area at about 2:30 in the morning. The officer looked the car over but did not see anything suspicious about it. He left the car and while patrolling he radioed the dispatcher for a listing on the license plate numbers. The dispatcher, mistakenly as it turned out, instructed the officer that the plates were registered to a different auto than the one the officer had observed. The officer returned to the car and searched it. He testified that he had "the thought in mind of impounding the car", and that the search was a "regular procedure on impound, to determine if there is anything of value in the car". During this search the officer found two wallets which he examined and determined to be the property of the petitioner and his co-defendant, one of whom the officer knew had been arrested for burglary. The officer then radioed the desk sergeant for permission to watch the car pending the return of the occupants. Presumably the officer had at this point given up any idea of impounding the car. He then searched the car thoroughly, including beneath the seats. Finding nothing, he took up a position in his patrol car from which he could observe the suspect car unseen. At this time he was informed by radio that the plates on the suspect car were correctly registered to that car. At about 4:00 in the morning, the petitioner and his companion were observed getting into the suspect car and driving off in a normal manner. The officer pursued and signaled the car to stop. The car stopped, and the officer searched it again, this time seizing several tools including two screwdrivers, two pairs of gloves and a pry bar. The petitioner and

his companion were then placed under arrest for vagrancy and taken to the jail. The following morning, after discovery of a burglary in the neighborhood, the petitioner's companion was questioned and then both men were charged with burglary.

At the trial on the charge of burglary, the state introduced evidence derived from each of the three searches, to wit: The wallets belonging to each of the defendants found during the first search, testimony that when the car was searched the second time there were no tools in the car, and the tools found during the third search.

The trial on the charge of burglary was held before the ruling of the United States Court in the case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), and no objection was made to the introduction of the evidence specified in paragraph (d) on the grounds that it was illegally seized. The case was appealed to the Utah Supreme Court and the constitutional question of illegal seizure was raised there and ruled upon by that court. The parties agree that the issue of whether or not the evidence was legally seized was timely raised and is a proper issue before this court in this proceeding.

The state in its brief attempts to justify the first search as follows:

"The first search occurred after Officer Hyman was informed that the registration of subject vehicle was improper in that the license number the officer called in was reported to be for an Oldsmobile and subject vehicle was a Chevrolet. At this time a misdemeanor was being committed in the officer's presence. Utah Code Annotated § 41–1–142 (1960) provides:

" 'The following acts are prohibited and the commission thereof is hereby declared to be a misdemeanor.

(c) To place or display any such registration plate or card upon any other vehicle than that in respect whereof the same was issued by the department.

(d) To use or permit the use or display of any registration plate, registration card or permit upon or in the operation of any vehicle other than that for which it was issued.

(k) It is a misdemeanor for any person to violate any of the provisions of this act * * *.'

"Since the registration plates upon the petitioner's vehicle were issued for another automobile, the petitioner in operating the vehicle, violated the above provisions. Utah Code Ann. § 41–1–17 (1960), expressly required Officer Hyman, as a peace officer, to enforce the Motor Vehicle Act. See Utah Code Ann. § 77–10–6 (1953). Since a misdemeanor was being committed in his presence, Officer Hyman had every right to inspect the defendant's vehicle prior to its being impounded. Utah Code Ann. § 41–1–115 (1960). Petitioner attempts to argue the illegality of this search citing Preston v. United States, 376 U.S. 364 [84 S.Ct. 881, 11 L.Ed.2d 777] (1964), *Preston* stands for the proposition that a search of an impounded vehicle cannot be made when that search is too remote in time or place to have been made incidental to the arrest; a search warrant must be obtained in that instance. Here, the search was prior to impound. It was made to determine the existence of any valuables for inventory purposes. If a police officer were to impound an abandoned vehicle without the use of an inventory, he could well be held civilly liable for conversion of articles claimed to have been therein if these were not later present."

The mandate of the Fourth Amendment, imported into the Fourteenth Amendment by *Mapp*, supra, is that people shall be secure against unreasonable searches and seizures, but under the Amendments there may be reasonable searches without a search warrant if incident to a lawful arrest. General exploratory searches cannot be undertaken by officers with or without a war-

rant as an incident to an arrest turns upon reasonableness under all the circumstances. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

A misdemeanor actually was not being committed in the presence of the officer, or at all, at the time of the initial search as far as the evidence discloses. Assuming that the officer had reason to believe because of the erroneous report that the car was improperly registered, there was no arrest of anyone, and the only way the car could have been "arrested" was by impounding, or at least by continued observation, neither of which required a search of the vehicle without a search warrant. To say in effect that if someone had been present in the vehicle an arrest could have been made on the basis of the erroneous report and that therefore the search as actually made could be deemed incident to a lawful arrest, would be poor law and a poor reason. Even a search too remote from an actually valid arrest is unlawful. It does not help matters only to assume that an arrest could have been made. There then would be involved a problem more serious even than remoteness.

The claim that the officer had to search the car before impounding it because if he had not he could be held civilly liable for conversion of articles which might be claimed to have been in the car and later not found, is specious. Rather than raise such questions by an irregular search in private, the officer's protection could much better have been assured through reliance upon a search warrant in the regular way. The circumstances of his private search were designed to invite the very questions mentioned and others.

Section 41–1–17 cited by the state does, indeed, authorize police officers to "enforce" the provisions of the Motor Vehicle Act, but this does not validate unreasonable searches and seizures. The "arrests" therein authorized are of persons committing violations of the law in the presence of the officers and the "inspections" are those to which a driver stopped upon reasonable belief that the law is being violated must submit.

I conclude that the first search of the car which produced the wallets was illegal. Neither this nor the second search which revealed that there was nothing under the seat was incident to any arrest, lawful or otherwise. The circumstances presented neither probable cause nor exigency excusing the application for a search warrant. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Simpson v. United States, 346 F.2d 291 (10th Cir. 1965); People v. Burke, 61 Cal.2d 575, 39 Cal.Rptr. 531, 394 P.2d 67 (1964). See also State v. Kent, Utah, 432 P.2d 64 (Sept. 1967).

The evidence obtained from the second search was the knowledge that there was nothing under the seat of the car. When combined with the knowledge gained from the third search, which disclosed that there were tools under the seat at that time, this evidence formed a vital part of the case against petitioner. Mere information may constitute fruits of an illegal search which are constitutionally tainted. Simpson v. United States, 346 F.2d 291 (10th Cir. 1965). Cf. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). See also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

The third search and the arrest involve other problems. The officers made the arrest of the petitioner for "vagrancy". The presence of a defendant in an automobile early in the morning even though accompanied by another person known to have been charged on another occasion with burglary, did not alone constitute probable cause for such

an arrest. By this time the arresting officer had learned that the automobile was properly registered. If the search were incident to the arrest, the arrest was precipitated by the first and second searches which were illegal. The facts here are similar in some respects to those in Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), where the court said:

"The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

But in the case at bar the difficulties are compounded by essential dependence upon either erroneous information concerning false registration or illegally obtained evidence of association, or both, to make even a colorable case of probable cause for the arrest. Even on the basis of either, or both, grounds for the arrest appear exceedingly tenuous.

The State Supreme Court in State v. Dodge, supra, did not determine that the arrest was legal for any valid reason. It perpetuated the original error of the searching officer even though by undisputed evidence it was shown in the trial transcript and it is agreed by the parties here that the officer had discovered prior to the arrest that his information was erroneous. But the Supreme Court in review said:

"Appellants further contend that there was an illegal search of the automobile in which they were riding when they were arrested, and therefore the evidence obtained in such manner deprived them of due process of law be-

cause it was a violation of their rights against unreasonable search and seizure under the provisions of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and was therefore inadmissible in evidence against them for the crime of which they were convicted under the recent decision rendered June 19, 1961, by the Supreme Court of the United States in Mapp v. Ohio. The decision in that case has no application to the facts here shown because the record discloses that the search was made while appellants were in possession of a car which the arresting officer knew carried a registration plate for a vehicle other than the one for which it was issued by the Department of Motor Vehicles, this being a misdemeanor under the provisions of Section 41-1-142(c), U.C.A. 1953. A crime therefore having been committed in the presence of the officer, the arrests were authorized and search of the automobile made at the time of the arrests which revealed the evidence subsequently used at the trial was not obtained by an unreasonable search and seizure." (See 365 P.2d 798, 800–801.)

 This reason clearly not being valid by the undisputed evidence, and there being no further findings made by the Supreme Court in its rejection of petitioner's subsequent petition for a writ of habeas corpus, it is apparent that there is no state court proceeding which relieves this court from itself making a determination as to the validity or invalidity of the arrest. 28 U.S.C.A. § 2254 as amended, supra. Cf. Justus v. State of New Mexico, 378 F.2d 344 (10th Cir. 1967).

The attempted justification of the arrest on the basis of the vagrancy statute must be rejected. Utah Code Anno. § 76-61-1 (1953), refers to a person "who wanders about the streets at late or unusual hours * * * without any visible or lawful business", or a person known

to be a "pickpocket, thief, burglar * * *" or an "associate of known thieves." Neither the fact of driving a car in the early hours of the morning nor that petitioner was in company of one who had at some undisclosed time "been charged" with burglary reasonably tended to indicate these conditions. And again, the fact of the former "charge" itself had been revealed by an illegal search. In another line of explanation for the arrest, it is said that reasonable cause was shown because when the officer following the car shined his red light on the back window he noticed the person on the right side lean over as if he could be putting something under the seat. This is a very equivocal motion on which to hang the foreclosing of a constitutional claim. Compare Mares v. United States, 319 F.2d 71 (10th Cir. 1963), where an arrest of persons on a Denver street in the early hours of the morning was held valid, but under circumstances going far beyond anything indicated here, including the facts that the defendant and his companion fitted the descriptions of the perpetrators of a series of robberies in the vicinity, that they fled when the police who were obviously recognized as police officers attempted to question them, and that an object dropped from under the coat of one of the men as he ran, which thereafter turned out to be a sawed-off shotgun.

▇▇▇ There is also question whether the search actually followed the arrest and could have been incidental to the arrest. Welch v. United States, 361 F.2d 214 (10th Cir. 1966), suggests that the sequence may be significant even though the two events occurred nearly at the same time. But see Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1950), and Massey v. United States, 358 F.2d 782 (10th Cir. 1966), equating interference with freedom of motion in the absence of a formal announcement with "arrest". It is indicated by the stipulation of the parties in the pre-trial order herein that the arrest

followed the third search, in which event it would be clear that the search was not incidental to the arrest. Even though we should assume that the arrest was made prior to the search in question the result would not be changed. A prior illegal arrest cannot be validated by an "incidental" search any more than the fruits of an illegal arrest can justify the arrest. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. See also Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). We do not reach the question whether the state statute on vagrancy could be deemed constitutionally infirm in its various possible applications. It does not on its face purport to, nor does it, justify the instant arrest under the circumstances.

▇▇▇ On the totality of circumstances I conclude that probable cause did not exist at the time for the arrest of petitioner for any reason shown and that the final search was therefore illegal. Concluding that this holding is required, no additional space need be used to underscore the necessity of vindicating the constitutional rights involved, as this is abundantly documented as the court's duty upon such a holding in numerous cases from *Kent,* supra, the most recent state decision on the subject of unlawful searches and seizures, through frequent declaration of the United States Court of Appeals for the Tenth Circuit, to recent landmark decisions of the United States Supreme Court.

A final matter requires attention. Respondent argues that the petitioner is precluded from relying here upon the alleged illegal searches and seizures since he did not object to them at the time of trial nor move to suppress them. It is also said that under the ruling of McDonald v. United States, 307 F.2d 272 (10th Cir. 1962), he is estopped, since his trial counsel mentioned the evidence in his opening statement.

▇▇▇ At the time of trial the ruling of Mapp v. Ohio, supra, had not been

handed down, so that there was no basis for objecting to the use of the illegally obtained evidence then, in view of the then existing authoritative rule to the contrary. But such evidence was objected to on the appeal to the State Supreme Court on constitutional grounds. Furthermore, the defendant's opening statement at the trial was reserved until after the state had presented its case and had already introduced the evidence, so petitioner did not himself first bring the evidence into the case as in *McDonald*.

In Dillon v. Peters, 341 F.2d 337 (10th Cir. 1965), Judge Lewis, writing for the court, held that an accused's failure to object during his state trial to evidence obtained by an illegal search and seizure did not bar consideration of his claim of illegal evidence in federal habeas corpus where he was tried prior to Mapp v. Ohio, and the accused brought the matter to the attention of the trial court in an amended motion for new trial soon after the Supreme Court decision. The Supreme Court spoke a few months later to the same issue in the case of Linkletter v. Walker, Warden, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (June 7, 1965). It was there held that the exclusionary rule of *Mapp* would not apply to a state court conviction which had become "final" before its rendition. A "final" judgment was defined to be one as to which the availability of appeal had been exhausted and the time for petitioning for certiorari had elapsed. The judgment here was not final at the time *Mapp* was decided.

The petition for a writ of habeas corpus is granted, it being held that justice requires the declaration that the said forgery and burglary convictions were and are void and that the continued detention of petitioner is authorized only by virtue of the cumulative sentence last imposed and not here under attack, but subject to such further proceedings, if any, in the former cases as may be consistent with petitioner's constitutional rights herein declared.